PARK ENTERPRISES, INC. v. BENEDICT B. TRACH.
DOROTHY TRACH, ALSO KNOWN AS MRS. BENEDICT B.
TRACH, INTERVENER.
NORTHWESTERN NATIONAL BANK OF MINNEAPOLIS,
GARNISHEE.[1]

March 30, 1951.

No. 35,391.

See, Park Enterprises, Inc. v. Trach, 233 Minn. 473, 47 N. W. (2d) 197.

*Lewis E. Lohmann* and *John M. Fitzgerald,* for appellants.

*Dorsey, Colman, Barker, Scott & Barber,* for Park Enterprises, Inc., respondent.

LORING, CHIEF JUSTICE.

In this case plaintiff, Park Enterprises, Inc., sued defendant, Benedict B. Trach, in the municipal court of Minneapolis to enforce payment of rent under an oral lease between the parties. In pro-

[1]Reported in 47 N. W. (2d) 194.

ceedings ancillary to this action, plaintiff garnisheed a joint bank account standing in the name of defendant and his wife, Dorothy Trach. Mrs. Trach was permitted to intervene in the garnishment proceedings. The Northwestern National Bank of Minneapolis is the garnishee.

Plaintiff obtained a default judgment for $143.45 against defendant in the main action. In the garnishment proceeding, the facts of the case were stipulated, and the parties requested that the court make and enter findings of fact, conclusions of law, and order for judgment on the basis of the facts stipulated.

The facts as stipulated are as follows: At the time the garnishment summons was served, defendant and intervener had a "joint bank account" with the garnishee in which the deposit credit was $327.38. This account was opened and maintained subject to the following terms and conditions, which are printed on the reverse side of a joint account signature card:

"The account listed on the reverse side hereof is a joint and several account. All funds now or hereafter deposited in said account by either or any of the depositors shall be the property of the depositors jointly with the right of survivorship. Each depositor shall have complete and absolute authority over said account during the joint lives of the depositors and may withdraw all or any part of such funds on checks or other withdrawal orders signed by either or any of the depositors and by the survivor or survivors in case of death of any thereof."

Defendant and intervener have independent incomes. Each of them, from time to time, has deposited portions of his or her individual funds to the credit of this joint account and from time to time has withdrawn funds from the account for family or individual purposes. It is impossible to determine on an evidentiary basis the exact amount of funds each of them has contributed to the joint account.

The trial court made findings in conformity with the facts stipulated, and, having concluded that defendant and intervener should

be presumed equal owners of the garnisheed account in the absence of proof establishing the amount each has contributed to it, ordered judgment against the garnishee for $143.45, together with interest and costs, the entire judgment not to exceed $163.69, that being one-half the joint account. Judgment was entered accordingly.

Intervener's sole allegation and claim in the garnishment proceeding is that she and defendant are joint owners of the garnisheed bank account, and therefore that the account is not garnishable for defendant's individual debt to plaintiff. Defendant's contentions are the same as those of intervener. These contentions having been rejected by the trial court, defendant and intervener have appealed from the judgment against the garnishee.

This type of account is difficult, if not impossible, to classify under traditional categories of legal ownership. The account is distinguished from a joint tenancy because of the fact that it is joint and several, whereas in a joint tenancy there is joint ownership only.[2] The survivorship feature of the account readily distinguishes it from a tenancy in common,[3] and yet is not sufficient alone to make it a joint tenancy.[4] "Joint and several," when used to designate a type of ownership, is somewhat of a legal anomaly notwithstanding the fact that the term appears in M. S. A. 48.30. By definition, several ownership is a denial of joint ownership.[5] Since the type of ownership which the bank and its depositors have

[2]It is well settled that a joint tenancy is characterized by the four unities of time, title, interest, and possession, and if any of these elements is lacking the estate is not one in joint tenancy. Greiger v. Pye, 210 Minn. 71, 297 N. W. 173; Gau v. Hyland, 230 Minn. 235, 41 N. W. (2d) 444. It is obvious that if either ownership or possession is several, there can be no joint tenancy in the traditional sense.

[3]The doctrine of survivorship is a distinctive incident of joint tenancy. See, 3 Dunnell, Dig. § 4951, and cases cited therein.

[4]Papke v. Pearson, 203 Minn. 130, 280 N. W. 183.

[5]See, Black, Law Dictionary (3 ed.) 1614, where the word "several" is defined as meaning: "Separate; individual; independent; severable. In this sense the word is distinguished from 'joint.' Also exclusive; individual; appropriated. In this sense it is opposed to 'common.'" In any sense, "several ownership" is in opposition to "joint or common ownership," and "sev-

created by their contract defies classification under traditional concepts of property ownership, we are forced to treat this case as presenting a contract question and must decide what the incidents of this type of ownership are primarily by reference to the terms of the contract creating it.

By the deposit agreement here involved, each depositor has given the other depositor in the account complete and absolute authority over it and unconditional power to withdraw all or any part of the account. By the terms of the agreement, the bank is likewise obliged to pay any part or all of the account to either depositor upon demand.

Since in purpose and legal effect a garnishment proceeding is virtually an action brought by defendant in plaintiff's name against the garnishee, resulting in the subrogation of the plaintiff to the right of the defendant against the garnishee,[6] we have concluded that plaintiff here may not only garnishee this joint account, but also that it would be entitled to recover judgment against the garnishee for the entire amount of the account if its judgment against defendant were sufficient to exhaust it. Defendant is entitled to withdraw any part or all of the account, and plaintiff, in effect, is subrogated to that right.

A case similar to the one at bar arose in Canada, Empire Fertilizers Ltd. v. Cioci [1934] 4 D. L. R. 804, 805, where the court stated:

---

eral possession" is in opposition to those terms when used in the sense of "exclusive possession."

In the case of Estate of Kwatkowski, 94 Colo. 222, 226, 29 P. (2d) 639, 641, the court struggled with the meaning of the term "jointly and severally," as applied to ownership of property, and, in default of a better view, concluded that the term created a tenancy in common. The court's remarks with reference to this kind of drafting are apropos here. There the court stated:

"Perhaps the lesson to be conveyed by this case is that the preparation of * * * legal documents by laymen having a mere smattering of the law will continue to breed litigation which might well be averted by employing the services of a competent attorney."

[6] Midland Loan Finance Co. v. Kisor, 206 Minn. 134, 287 N. W. 869.

"If the judgment debtor, B. N. Cioci, had given to the judgment creditor a cheque signed by B. N. Cioci alone on the Royal Bank, Jane and Annette Branch, Toronto, for the amount owing by Cioci on the judgment, the bank, on presentment of such cheque for payment, would have had to pay it, on the penalty of an action for damages by B. N. Cioci, against the bank if such cheque had been dishonoured. I see no reason why this judgment creditor of B. N. Cioci should not have recourse to these proceedings to compel such appropriation of these funds as was within the power of Cioci himself at the time of the issue and service of the garnishee summons on the bank * * *."

We find ourselves entirely in agreement with the reasoning of the Canadian case cited above. Intervener, having agreed to allow defendant to treat the funds in their joint account as his individual property, is in no position to assert that creditors, subrogated to his rights, may not treat them as if they were his individual property. Intervener assumed the risk that defendant would pay these creditors voluntarily, and we fail to see why an involuntary payment stands upon a different footing. If intervener assumed the risk that her husband would voluntarily honor his debts out of this account, we see no meritorious reason why she should be legally entitled to eschew the risk that he will be compelled to do so. The law should not hedge intervener's risk at the exact instant when the degree of her risk rests upon a point of honor. We shall not assume that intervener took the risk that her husband would honor his debts out of this account merely because she thought he could not be compelled to do so.

The peculiar features of a joint bank account, such as this case presents, make it difficult, if not impossible, in most cases, to determine what portion of the account belongs to each depositor. A long series of deposits which cannot be traced to their source, and a similar series of withdrawals which cannot be traced to their destination, are normally involved. This defect is inherent in the severalty feature of such bank accounts wherein each depositor is

allowed to treat joint property as if it were entirely his own. Like any loose system of dealing with money, joint bank accounts sacrifice precision to convenience and becloud the respective rights of the depositors. The courts should not encourage parties to do their bookkeeping in court when, by their private contract, they have virtually declared that they do not wish to be inconvenienced by any strict accountability as between themselves. A joint bank account of this kind is a creature of contract between parties avowedly indifferent to the exact percentage of ownership between themselves. The law should take them at their word and give effect to their contract without making detailed and belated evidentiary inquiries to establish factual ownership. Any presumption, whether conclusive or rebuttable, that part or all of these joint accounts are immune from garnishment has the effect of either creating or tending to create a nonstatutory exemption for the parties using them, and any attempt to base the extent of garnishment upon the respective amounts of the account owned by each depositor will compel courts and juries to grope with problems which the depositors themselves have declared to be of no consequence. Let them abide the results which flow from their own declared purposes.

Although the trial court's order limiting judgment against the garnishee is erroneous so far as it limits judgment against the garnishee to one-half the account, plaintiff has not complained of the error in this proceeding, and we accordingly affirm the judgment entered pursuant to the trial court's order.

Affirmed.