Walter N. Leaf and Geraldine Leaf, Plaintiffs-Appellees, v. Lucille McGowan, et al., Defendants. Sears-Community State Bank, Garnishee, and Albert Jasourowski, Adverse Claimant, Appellant.

Gen. No. 46,887.

First District, Second Division.
February 19, 1957.
Released for publication April 2, 1957.

Albin V. Spunar and Mitchell Kilanowski, of Chicago, for appellant.

Charles Ralph Johnston, of Chicago, for appellees.

PRESIDING JUSTICE ROBSON delivered the opinion of the court.

This is an appeal from a denial of petitioner Albert Jasourowski's motion to dismiss a garnishment proceeding in the Circuit Court of Cook County and from a judgment for plaintiffs for $963.38. We have not had the benefit of a reply brief by appellant Jasourowski to the arguments made and cases cited by plaintiffs in their brief.

Plaintiffs, who had secured a judgment for $13,000 against one Lucille McGowan, instituted a garnishment action against the Sears Community State Bank, as garnishee, to satisfy the judgment from money held in a joint savings account with the bank by Lucille McGowan and Jasourowski. The bank answered admitting an indebtedness of $2,732.42 to Lucille McGowan and suggesting that Jasourowski be permitted to intervene as an adverse claimant to this sum. Jasourowski intervened with a motion to dismiss alleging that money held in a joint account is not subject to garnishment, and, in the alternative, alleging that all the money in the joint account was actually his. The trial court denied Jasourowski's motion and found for plaintiffs.

The record discloses that the garnishee bank kept a joint savings account in the names of Jasourowski and Lucille K. Fay and that Lucille K. Fay and Lucille McGowan are the same person. The bank cashier, testifying on behalf of plaintiffs, identified nineteen deposit slips in the handwriting of Lucille McGowan totalling $963.38, and three in the handwriting of Albert Jasourowski totalling $196.29. All the deposit slips were subsequent to August 1, 1935. Those prior had been lost or destroyed. Plaintiff introduced the signature card that was signed by Jasourowski and Lucille K. Fay, which is the contract between the parties and the bank. The pertinent provision thereof reads as follows:

59

■■■■■■■■■

"The undersigned hereby agree to the By-laws, Rules and Regulations governing the Savings Department of Sears-Community State Bank, Chicago, and further agree that all deposits in this account, or any part thereof, or any interest or dividend thereon, may be paid to any one of the undersigned, whether the other or others be living or not, on the receipt or acquittance of any of the undersigned."

The account was originally opened by Lucille McGowan and Jasourowski's name was placed on the account subsequently. Also introduced into evidence were four ledger sheets of the bank showing the deposits and withdrawals from the account. These sheets indicate that the account was opened in July of 1931. Numerous deposits were made in the account with only one withdrawal in the sum of $666.75 in February of 1935. The decree in chancery in which a part of the relief granted was the judgment that forms the basis of this garnishment, makes extensive findings as to the fraud perpetrated by Lucille McGowan upon plaintiffs.

Jasourowski testifed that all the money in the account was actually his; that on February 15, 1935, Lucille McGowan withdrew $666.75, which was all the money she had in the account; that any deposits she made thereafter in the account were on his behalf and that her name remained on the account for a matter of convenience. In the course of his cross-examination he admitted that he and Lucille McGowan had been living together; that at one time he claimed to be the natural father of her child.

Two questions are presented by this appeal. The first is whether or not a judgment creditor may prove a garnishable debt by establishing that the judgment debtor holds a bank account jointly with another. The second is whether or not the trial court was justified in disregarding Jasourowski's testimony that all the money in the account belonged to him.

As to Jasourowski's first contention, the law in this state setting forth the rights of a judgment creditor against a judgment debtor who holds a bank account jointly with another is not clear. See Brown v. First National Bank of Chicago, 271 Ill. App. 424 (1933); Comstock v. Morgan Park Trust and Savings Bank, 319 Ill. App. 253 (1943); Hackman v. Platt, 298 Ill. App. 626 (1939); Nudelman v. Stern, 315 Ill. App. 215 (1942). The same problem has arisen in a number of jurisdictions. In each instance the question has been settled according to concepts peculiar to the jurisdiction in which it has arisen. These concepts range in scope and application from specific statutory regulation over bank accounts to the most general common law principles governing contracts and property. Sitomer v. North River Savings Bank, 196 Misc. 870, 95 N.Y.S.2d 402 (1940); Fairfax v. Savings Bank of Baltimore, 175 Md. 136, 199 A. 872 (1938); Dover Trust Co. v. Brooks, 111 N. J. Eq. 40, 160 A. 890 (1930); Cullum v. Rice, 236 Mo. App. 1113, 162 S.W.2d 342 (1942); American Oil Co. v. Falconer, 136 Pa. Super. 598, 8 A.2d 418 (1939). The most recent decisions have allowed garnishment or attachment of the joint account. Republic of China v. Pong-Tsu Mow, 15 N. J. 139, 104 A.2d 322 (1954); United States v. Third National Bank and Trust Co., 111 F. Supp. 152 (D.C.–M.D. Penn. 1953); Park Enterprises, Inc. v. Trach, 233 Minn. 467, 47 N.W.2d 194 (1951).

Our Supreme Court in the recent case of In re Estate of Schneider, 6 Ill.2d 180, clarifies the law relative to the rights of depositors as between themselves to a joint bank account. The rights of a creditor in garnishment were not involved. The court's reasoning, however, is helpful to us in deciding the issue before us. In discussing the nature of joint bank accounts the court said at pp. 183–4:

"The familiar joint bank account has had an uneasy career in the courts because the relationships which it

contemplates do not fit readily in common-law categories. The four unities of the common-law joint tenancy, the notion of an undivided moiety in each joint tenant, and the difficulty of applying the common-law concept of joint tenancy to a fluctuating res have caused difficulties. Common-law doctrines governing gifts of personal property have contributed their share to the complex of legal problems stemming from joint bank accounts, for the common law required a complete relinquishment of ownership by the donor in order to achieve an effective gift, while the joint bank account contemplates power of withdrawal by both parties."

The court held parol evidence is admissible to establish the rights of parties to funds held by a bank under the terms of a so-called joint tenancy contract. As a result of this holding it is apparent a court has the right to consider the terms of the contract and allow extrinsic evidence as to the ownership of the funds in the account.

In applying this principle, we find that the Supreme Court of Minnesota in the case of Park Enterprises, Inc. v. Trach, 233 Minn. 467, had before it the same issue we are considering. In that case the plaintiff sued the defendant for rent and obtained a default judgment. Plaintiff sought to satisfy his judgment by garnisheeing a joint bank account to which the judgment debtor was a party. The other party to the joint account was permitted to intervene and alleged that a joint bank account was not subject to garnishment. The reasoning of the Minnesota Supreme Court in the construing of the so-called joint tenancy contract is very similar to that of our Supreme Court in the Schneider case, supra. The Minnesota Supreme Court said at pages 469, 470:

"This type of account is difficult, if not impossible, to classify under traditional categories of legal owner-

ship. The account is distinguished from a joint tenancy because of the fact that it is joint and several, whereas in a joint tenancy there is joint ownership only. The survivorship feature of the account readily distinguishes it from a tenancy in common, and yet is not sufficient alone to make it a joint tenancy. . . . Since the type of ownership which the bank and its depositors have created by their contract defies classification under traditional concepts of property ownership, we are forced to treat this case as presenting a contract question and must decide what the incidents of this type of ownership are primarily by reference to the terms of the contract creating it."

The court then reaches a very pertinent conclusion. On pp. 471–2 it said:

*"The peculiar features of a joint bank account, such as this case presents, make it difficult, if not impossible, in most cases, to determine what portion of the account belongs to each depositor. A long series of deposits which cannot be traced to their source, and a similar series of withdrawals which cannot be traced to their destination, are normally involved. This defect is inherent in the severalty feature of such bank accounts wherein each depositor is allowed to treat joint property as if it were entirely his own. Like any loose system of dealing with money, joint bank accounts sacrifice precision to convenience and becloud the respective rights of the depositors. The courts should not encourage the parties to do their bookkeeping in court when, by their private contract, they have virtually declared that they do not wish to be inconvenienced by any strict accountability as between themselves. . . .* The law should take them at their word and give effect to their contract without making detailed and belated evidentiary inquiries to establish factual ownership. Any presumption, whether conclusive or rebuttable, that part or all of these joint accounts are immune

63

from garnishment has the effect of either creating or tending to create a nonstatutory exemption for the parties using them, and any attempt to base the extent of garnishment upon the respective amounts of the account owned by each depositor will compel courts and juries to grope with problems which the depositors themselves have declared to be of no consequence. Let them abide the results which flow from their own declared purposes." (Emphasis ours.)

The court then concluded that the judgment creditor was entitled to a judgment for the full amount of the joint account.

■ We believe that this conclusion is unduly harsh and does not coincide with the reasoning of our Supreme Court in In re Estate of Schneider, supra. In Kovich v. Live Stock National Bank, 320 Ill. App. 535, 537, this court said, "Garnishment as a remedy is administered upon equitable principles." There are cases where the interests of innocent and unsuspecting parties could become involved in garnishment. They should be entitled to prove their interest, if any, in the joint account. In the instant case, plaintiffs have in effect by this action been subrogated to the rights and interests of Lucille McGowan in the joint account with the garnishee bank. Under the contract with the bank she would have been entitled to withdraw all the funds from the account to the detriment of Jasourowski. To recover from her he would have to prove what part, if any, of the funds belonged to him. In our opinion it is only fair and equitable that a joint bank account may be garnisheed by a judgment creditor when one of the parties to it is the judgment debtor. This in effect was the holding in Hackman v. Platt, supra, in which we concur.

When we apply this reasoning, that of our Supreme Court in In re Estate of Schneider, supra, and the statements made by the Supreme Court of Minnesota

64

in Park Enterprises, Inc. v. Trach, supra, particularly the part which we have emphasized, we are of the further opinion that if a garnishee answers that a judgment debtor holds money in a joint bank account, this is sufficient proof to establish a prima facie case for the judgment creditor that the money in the account belonged to the judgment debtor. The burden is then upon the other party to the joint account to prove what part, if any, of the funds in such account belonged to him. This holding is contrary to that in the case of Brown v. First National Bank of Chicago, supra, and Comstock v. Morgan Park Trust and Savings Bank, supra. These cases were, however, decided prior to the Schneider case and our conclusion, we believe, is in line with the law as interpreted by it and with the trend of the law in other states.

■ In view of our holding, was Jasourowski's testimony sufficient to overcome the presumption and prove that all the money in the account belonged to him? When we consider the relationship of Jasourowski and Lucille McGowan, the fact that deposit slips totalling $963.38 were admittedly in Lucille McGowan's handwriting and those totalling only $196.29 in his handwriting, Jasourowski's unsupported statements that all the money had been earned by him, and his statement that Lucille McGowan had withdrawn all her money from the account, we conclude Jasourowski didn't sustain the burden of proof and that the trial court was justified in not giving credence to this testimony. As no cross appeal has been filed it is not necessary for us to pass upon the balance of the account in excess of the judgment.

The judgment of the trial court is affirmed.

Judgment affirmed.

SCHWARTZ and McCORMICK, JJ., concur.