No. 2--03--0065

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

FREDRICK HIGHSMITH, ) Appeal from the Circuit Court

) of Winnebago County.

Plaintiff-Appellee, )

)

v. ) No. 02--MR--112

)

THE DEPARTMENT OF PUBLIC AID )

and BARRY MARAM, as Director of the )

Department of Public Aid, ) Honorable

) Ronald L. Pirrello,

Defendants-Appellants. ) Judge, Presiding.

______________________________________________________________________________

JUSTICE BYRNE delivered the opinion of the court:

Defendants, the Illinois Department of Public Aid (Department) and its Director, Barry Maram, appeal from an adverse judgment of the circuit court of Winnebago County in a proceeding under the Administrative Review Law (735 ILCS 5/3--101 
et seq.
 (West 2000)).  The Department had placed a lien on a certain investment account in order to collect past-due child support from Derrick Highsmith, who is the adult son of plaintiff, Fredrick Highsmith.  Plaintiff filed a request with the Department for a hearing to establish that the funds in the account belonged to him and not to Derrick.  Following the hearing, the Department found that Fredrick had failed to establish his interest in the account and that the Department could enforce its lien on the account for the full amount owed by Derrick.  On administrative review, the trial court found that the decision was against the manifest weight of the evidence and reversed the Department's decision.  We affirm the trial court's order.

The underlying administrative hearing occurred in February 2002.  Plaintiff offered three exhibits into evidence: (1) a statement from First Union Securities for an account entitled "Investment Account for Derrick L. Highsmith & Fredrick Highsmith[,] Jt Ten," showing a balance of $4,640.06 in cash and money market funds; (2) plaintiff's tax return for 2000 showing that he paid taxes on dividends from the account; and (3) Derrick's 1998 tax return reporting no interest or dividend income.  Plaintiff testified that he was 60 years old and Derrick was 30 years old.  Plaintiff opened the account in 1975 or 1976 with an initial deposit of $1,500.  The remaining funds in the account were "[d]ividends and interest reinvestment." Derrick never deposited any money in the account.  Plaintiff reported the income from the account on his tax returns; Derrick did not.  Plaintiff testified that he set up separate accounts for the education of Derrick and Derrick's brother.    According to plaintiff, "Derrick's name was on the account providing that Derrick would go to school and it would be set aside for his education."  Plaintiff acknowledged that Derrick had the right to withdraw funds from the account, but added that "he never did, because he never did question me about the account.  And he really didn't have anything to do with it, other than I just had his name added onto it."  

The Department concluded that "
the documentary evidence
 [plaintiff] provided does not establish that he is the sole owner of any portion of this account."  (Emphasis added.)  As noted, the trial court reversed this decision.  This appeal followed.

Under Article X of the Illinois Public Aid Code (Code) (305  ILCS 5/10--1 
et seq.
 (2000)), the Department is authorized to enforce child support obligations owed to persons receiving financial aid under the Code.  Section 10--25.5(a) of the Code provides that "[t]he State shall have a lien on all legal and equitable interests of responsible relatives in their personal property, including any account in a financial institution *** in the amount of past-due child support."  305 ILCS 5/10--25.5(a) (West 2000).  "Responsible relative" means the parent or spouse of a child under the age of 21.  305 ILCS 5/2--11 (West 2000).  Moreover, under applicable definitions, a money market mutual fund is considered an account in a financial institution.  See 305 ILCS 5/10--24 (West 2000).

By rule, the Department has provided a joint owner of personal property upon which a lien has been placed with the right to a hearing to contest the lien.  89 Ill. Adm. Code §104.110 (2002).  The applicable rule provides:

"The burden is on the joint owner to prove his or her share of the personal property or account through the production of documentary evidence.  Documentary evidence of the joint owner's share may include, but shall not be limited to, the following:

1) bank statements;

2) bank signature cards;

3) canceled checks or facsimiles of checks deposited into or drawn on the account;

4) account numbers of accounts being held in financial institutions;

5) title to the personal property;

6) loan repayment coupons or other loan documents;

7) receipt from purchase of the personal property; and

8) payroll records."  89 Ill. Adm. Code §104.110(h) (2002).

Defendants argue that the Department correctly found that plaintiff failed to meet his burden of producing documentary evidence establishing his share of the account.  Plaintiff responds that the Department's rule restricting the proof of ownership to documentary evidence is invalid and that when the documentary evidence is considered in conjunction with his testimony, the Department's decision was clearly erroneous.

We initially consider the appropriate standard of review.  In an administrative review proceeding, "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct" (735 ILCS 5/3--110 (West 2000)), and we will not disturb an agency's findings of fact unless they are against the manifest weight of the evidence (
Kendall County Board of Review v. Property Tax Appeal Board
, 337 Ill. App. 3d 735, 737 (2003)).  In contrast, however, if the question before the agency is a mixed question of fact and law, its decision will be upheld unless clearly erroneous.   
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 205 (1998).  As described by our supreme court, this standard is "between a manifest weight of the evidence standard and a 
de novo
 standard so as to provide some deference to the [agency's] experience and expertise."  
City of Belvidere
, 181 Ill. 2d at 205.  

A case presents a mixed question of fact and law when it "involves an examination of the legal effect of a given set of facts."  
City of Belvidere
, 181 Ill. 2d at 205; see also 
Du Page County Board of Review v. Department of Revenue
, 339 Ill. App. 3d 230, 234 (2003) ("whether given historical facts satisfy an established legal rule is a 'mixed question of law and fact' ").  In this sense, ownership of a joint account is not a purely factual question but, rather, involves consideration of historical facts within a framework of legal principles.  Accordingly, we must determine whether the Department's determination was "clearly erroneous."  The legal aspect of the question of ownership means that we owe less deference to the Department than we would if a pure question of fact were involved.

Turning to the merits, we note that although the account at issue in this case was not held at a bank, the general principles governing the determination of interests in joint bank accounts are closely analogous.  It has been observed:

"The familiar joint bank account has had an uneasy career in the courts because the relationships which it contemplates do not fit readily into common-law categories.  The four unities of the common-law joint tenancy, the notion of an undivided moiety in each joint tenant, and the difficulty of applying the common-law concept of joint tenancy to a fluctuating 
res
 have caused difficulties.  Common-law doctrines governing gifts of personal property have contributed their share to the complex of legal problems stemming from joint bank accounts, for the common law required a complete relinquishment of ownership by the donor in order to achieve an effective gift, while the joint bank account contemplates power of withdrawal by both parties."  
In re Estate of Schneider
, 6 Ill. 2d 180, 183-84 (1955).

In 
Leaf v. McGowan
, 13 Ill. App. 2d 58 (1957), cited by plaintiff, the court considered the rights of  judgment creditors to collect from a savings account held jointly by the judgment debtor and another party.  The 
Leaf
 court noted the Minnesota Supreme Court's decision in 
Park Enterprises, Inc. v. Trach
, 233 Minn. 467, 47 N.W.2d 194 (1951), holding that a judgment creditor is entitled to the full amount of a joint account.   The 
Park Enterprises
 court reasoned that joint accounts permit each depositor to treat the property as if it is entirely his or her own and that "[t]he courts should not encourage parties to do their bookkeeping in court when, by their private contract, they have virtually declared that they do not wish to be inconvenienced by any strict accountability as between themselves."   
Park Enterprises
, 233 Minn. at 471-72, 47 N.W.2d at 197.  The 
Leaf
 court concluded that this approach was "unduly harsh" and noted that "innocent and unsuspecting parties [whose interests] could become involved in garnishment" "should be entitled to prove their interest, if any, in the joint account."  
Leaf
, 13 Ill. App. 2d at 64.  The 
Leaf
 court reasoned that the judgment creditor was essentially subrogated to the rights of the judgment debtor.  
Leaf
, 13 Ill. App. 2d at 64.  Under the account agreement, the judgment debtor was entitled to withdraw the entire balance of the account, and to recover from her, the other party to the account would have had to prove what part, if any, of the funds belonged to him.  
Leaf
, 13 Ill. App. 2d at 64.  As such, the court held:

"[I]f a garnishee answers that a judgment debtor holds money in a joint bank account, this is sufficient proof to establish a prima facie case for the judgment creditor that the money in the account belonged to the judgment debtor.  The burden is then upon the other party to the joint account to prove what part, if any, of the funds in such account belonged to him."  
Leaf
, 13 Ill. App. 2d at 65.

In their reply brief, defendants correctly note that 
Leaf
 and other cases stand for the "general rule of law that a creditor does not have the automatic right to garnish the funds of a debtor on deposit in a joint account."  Defendants argue that because the Department has been given wide-ranging powers to collect child support, it should not be treated like an ordinary judgment creditor.  Unfortunately, defendants do not specifically suggest what rule should apply in place of the holdings in 
Leaf
 and similar cases.  To the extent that defendants mean to imply that the Department has an absolute right to all the funds in a joint account upon which it has a lien, we emphatically disagree.  The applicable statute is clear that the lien is only on "the legal and equitable interests" of the person who owes support. 305 ILCS 5/10--25.5(a) (West 2000).  The distinction between legal and equitable interests recognizes that legal title, while entailing a right to withdraw all the funds on account, does not reflect what courts sometimes refer to as the "reality" of ownership (see Annotation, M. 
 
Churchill, 
Joint Bank Account As Subject to Attachment, Garnishment, or Execution by Creditor of One Joint Depositor
, 86 A.L.R.5th 527, 548 (2001).   
Leaf
 sets forth a suitable framework for sorting out these interests.  Moreover, the Department's own rule affording the joint owner of an account the opportunity to show his or her interest would be meaningless if the Department had an absolute right to all funds on deposit.

It has been observed:

"The two main factors to determine ownership of a joint account are the exercise of control over the funds in a joint account *** and contributions to the account ***, which latter concept includes both the determination whether a given contribution by one codepositor constituted a gift to the others and the proprietary source of a given contribution as evidence of its beneficial ownership in the account."  Annotation, M. Churchill, 
Joint Bank Account As Subject to Attachment, Garnishment, or Execution by Creditor of One Joint Depositor
, 86 A.L.R.5th 527, 554 (2001).

Other relevant considerations include who paid taxes on earnings from the account (Annotation, M. Churchill, 
Joint Bank Account As Subject to Attachment, Garnishment, or Execution by Creditor of One Joint Depositor
, 86 A.L.R.5th 527, 632 (2001)) and the particular purpose, if any, for which the account was established (Annotation, M. Churchill, 
Joint Bank Account As Subject to Attachment, Garnishment, or Execution by Creditor of One Joint Depositor
, 86 A.L.R.5th
 527, 625-26 (2001) ("When a joint account is established for a particular purpose, or specifically held in trust for another, that fact is strong evidence to prove the intentions of the parties, and demonstrate who equitably owns the funds in the account")).

Mindful of these principles, we conclude that if the documentary evidence is considered together with plaintiff's testimony, he met his burden of showing ownership of the funds in the account.  Plaintiff submitted documentary evidence showing that the account was held in his name along with his son's.  Derrick would have been a young child when the account was established, and only plaintiff made any contribution to the account or paid taxes on earnings from the account.  Although Derrick's name was on the account, he never exercised any control over it.  Moreover, plaintiff's testimony demonstrates that the account was established for a special purpose--to finance Derrick's education.  Thus, the contribution to the account was not intended to be an unlimited gift of any part of funds but was, rather, at most, a conditional gift.  Under these circumstances, the evidence establishes that plaintiff owns the funds in the account, and the Department's contrary decision is clearly erroneous.

Defendants contend, however, that under the Department's rules, plaintiff was required to prove his interest through documentary evidence and that the documentary evidence here was insufficient.  Plaintiff responds that restricting the evidence in this fashion would violate both section 10--40(a) of the Illinois Administrative Procedure Act (5 ILCS 100/10--40(a) (West 2000)) and his right to due process.  We agree that the restriction violates plaintiff's right to due process.

We note defendants' contention that plaintiff's due process argument is waived because he did not raise it before the Department.  However, the error is sufficiently serious to justify relaxation of the rule of waiver, which, after all, "is not a limitation on this court's right to entertain an argument."  
Cathedral Rock of Granite City, Inc. v. Illinois Health Facilities Planning Board
, 308 Ill. App. 3d 529, 545 (1999), citing 
Hux v. Raben
, 38 Ill. 2d 223, 224 (1967).  Due process in an administrative proceeding is satisfied by a procedure that is suitable and proper to the nature of the determination to be made and conforms to fundamental principles of justice.  
Daniels v. Police Board of the City of Chicago
, 338 Ill. App. 3d 851, 860 (2003). The necessary procedural safeguards in a given case depend upon: (1) the significance of the private interest that will be affected by the administrative action, (2) the risk of the erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards, and (3) the significance of the state interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural safeguards would entail.  
El Sauz, Inc. v. Daley
, 328 Ill. App. 3d 508, 519 (2002).   We conclude that the procedure restricting proof to documentary evidence is not suitable to the determination of ownership of a joint account and does not conform to fundamental principles of justice.  First, the significance of the private interest in this setting is clearly high.  Second, restricting proof to documentary evidence creates a high risk of an erroneous deprivation because, as seen, the question of ownership depends on a variety of factors, not all of which are readily susceptible to documentary proof.  For example, material questions relating to the purpose of the account and the existence of donative intent may be too nuanced for proof by documentary evidence.  Testimonial evidence is apt to be highly valuable in answering such questions.  The third factor involves the significance of the state interest involved.  It cannot be gainsaid that the State's interest in enforcing child support obligations is substantial.  Moreover, restricting proof to documentary evidence has some value in preventing fraud.  However, we believe that the risk of erroneous deprivations outweighs this benefit.  While considering testimonial evidence may increase the opportunity for fraud, the traditional antidote is vigorous cross-examination of those claiming an interest in accounts subject to liens.  Accordingly, as a matter of due process, the Department should have considered plaintiff's testimony.  The trial court properly reversed the Department's decision.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

GROMETER and CALLUM, JJ., concur.