2016 IL App (1st) 151281

FIFTH DIVISION
July 15, 2016

No. 1-15-1281

|  |  |  |
|---|---|---|
| CEDO GATARIC, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff and Citation Petitioner-Appellee, | ) ) | |
| v. | ) ) | |
| ADRIAN COLAK, | ) ) | No. 12 L 3377 |
| Defendant | ) ) ) | |
| | ) | Honorable |
| (Vanya Khoury, Citation Respondent-Appellant). | ) ) | Alexander P. White, Judge Presiding. |
| | ) ) | |

PRESIDING JUSTICE REYES delivered the judgment of the court, with opinion.
Justices Lampkin and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1 The citation respondent, Vanya Khoury (Khoury), appeals from the circuit court of Cook County's order denying her claim to funds held in a joint checking account with defendant, Adrian Colak (Colak), and ordering those funds be turned over to plaintiff, Cedo Gataric (Gataric), in satisfaction of an underlying judgment obtained by Gataric against Colak. On appeal, Khoury argues that in rendering this determination the trial court applied an improper burden of proof. Khoury further argues that the trial court's finding that she was not the sole

owner of the funds contained in the joint checking account was against the manifest weight of the evidence. For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3     In March 2012, Gataric filed a breach of contract action against Colak and other individuals not parties to this appeal seeking to recover amounts allegedly due pursuant to loans made to Colak that were never repaid. The circuit court subsequently entered judgment in favor of Gataric against Colak in the amount of $298,692.78.

¶ 4     In supplementary proceedings, Gataric issued a citation to discover assets against JPMorgan Chase Bank, N.A. (JPMorgan).[1] JPMorgan responded to the citation indicating Colak was the owner of two accounts at its institution: (1) a savings account containing $1198.96; and (2) a checking account containing $9384.09. JPMorgan listed Khoury as a joint owner of the checking account. JPMorgan froze the assets contained in these accounts as of April 1, 2014. Thereafter, Gataric filed a motion requesting JPMorgan turnover the funds contained in the savings and checking accounts in satisfaction of the judgment.

¶ 5     On May 19, 2014, Gataric filed a citation to discover assets against Khoury. Subsequently, on May 29, 2014, the circuit court entered an order requiring Khoury to personally appear before the court on July 30, 2014. On June 11, 2014, Khoury filed her appearance as a citation respondent along with a motion for an extension of time to respond to the motion for turnover of funds. On June 25, 2014, the trial court granted Khoury's motion for an extension of time and entered a briefing schedule on the motion for turnover of funds.

¶ 6     On June 30, 2014, Khoury filed her response to the motion for turnover of funds. In her response, Khoury asserted she opened the checking account solely in her name on May 12, 2010. On July 25, 2013, she added Colak as a joint owner of the checking account. Khoury stated that

_____

[1]We adopt the spelling of "JPMorgan" as it appears in the record on appeal.

on March 10 and March 13, 2014, she deposited $6200 and $25,062, respectively, into the joint checking account for Colak's use as a short-term loan to Colak. Thereafter, on March 17 and 26, 2014, Colak deposited $6000 and $25,000, respectively, into the checking account as repayment for the loan. Khoury argued that as of April 1, 2014, none of the funds in the checking account belonged to Colak. Khoury attached an affidavit in support of her response to the motion for turnover of funds. In her affidavit Khoury averred the facts as alleged in the response to the motion were true and correct. Khoury also attached to her response bank statements regarding the joint checking account for the time period of May 16, 2013, through July 16, 2013 (when she was the sole owner of the checking account), and January 17, 2014, through April 15, 2014. Khoury did not include statements from July 17, 2013, through January 16, 2014, in her response.

¶ 7    In reply, Gataric argued Khoury failed to establish by clear and convincing evidence that a gift was not intended when she added Colak as a joint owner of the checking account.

¶ 8    After numerous continuances, on November 6, 2014, the trial court conducted an evidentiary hearing on the motion for turnover of the funds contained in the JPMorgan accounts.[2] Khoury and her husband, Nassar Khoury (Nassar), testified at the evidentiary hearing. The trial court took the matter under advisement and on December 18, 2014, granted Gataric's motion for turnover of funds.

¶ 9    Khoury then filed a motion to reconsider in which she argued that the trial court made factual errors in its order, namely that: (1) Colak was referred to as "Ms. Colak" when he is male and Khoury was referred to as "Mr. Khoury" when she is female; (2) the order referred to an affidavit from "Nasser [sic] Khoury" that does not exist; and (3) JPMorgan sent an answer to

[2]No transcript of the evidentiary hearing is contained in the record on appeal nor has Khoury provided an agreed statement of facts or a bystander's report regarding the evidentiary hearing. See Ill. S. Ct. R. 323 (eff. Dec. 13, 2005).

Gataric's attorney listing "Khoury, a/k/a Nassir, Sam [*sic*]" when Nassar is not an owner of the checking account. Khoury further argued the trial court did not properly consider the evidence where Nassar testified that the joint checking account was used for personal and family purposes only and that deposits into the checking account came from the operations of his business and from overseas family accounts. Khoury additionally noted Nassar's testimony regarding how Colak came to be a joint owner of the checking account. According to Khoury's motion to reconsider, Nassar testified "in summer of 2013 he approached Colak to act as an intermediary for the purchase of a condominium unit in the building in which Nassar and Vanya Khoury reside. Nassar Khoury wanted Adrian Colak to use the funds in the Chase Account for the purchase of that condominium unit. That was the only reason that Adrian Colak was added to Vanya Khoury's Chase Account. Despite the attempted purchase not being completed, Adrian Colak was never removed as an owner from the Chase Account." Khoury's motion to reconsider further explained that Nassar was the "primary person to testify at the November 6th hearing due to Vanya Khoury's limited use of the English language."

¶ 10    In response, Gataric noted that while Khoury signed an affidavit which was typed in English, when called to testify at the evidentiary hearing, Khoury stated in English that she did not speak English. Gataric further argued that Nassar was the only witness and his testimony failed to provide clear and convincing evidence that the legal presumption of a gift to Colak was overcome.

¶ 11    After the matter was fully briefed and argued, the circuit court issued a written order denying Khoury's motion to reconsider. The court noted that the misstatements in the order granting the motion for turnover of funds did not lead to a misapplication of the law. According to the court, Khoury presented no newly discovered evidence or changes in the law, but instead

asserted the same arguments she presented at the evidentiary hearing. The court concluded this was not a proper basis for a motion to reconsider and denied the motion. This appeal followed.

¶ 12                                                    ANALYSIS

¶ 13    Khoury first argues that in its December 18, 2014, order the trial court improperly applied a higher burden of proof, that of clear and convincing evidence. According to Khoury, in matters involving the garnishment provisions of the Code of Civil Procedure (garnishment statute), the "trial shall be conducted as in other civil cases." 735 ILCS 5/12-711(c) (West 2014). Khoury maintains that in an ordinary civil case the burden of proof is by a preponderance of the evidence. Khoury argues that because there was no fiduciary relationship between Khoury and Colak and the matter did not involve any fraud, therefore, the burden of proof was not clear and convincing evidence, but instead was "a presumption in favor of Gataric with the burden on Khoury to prove what interest Khoury had in the Joint Account by a preponderance of the evidence."

¶ 14    Gataric argues Khoury forfeited this argument by not raising it before the trial court. While, generally, a party forfeits issues raised for the first time on appeal (see *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15), we choose to exercise our discretion and address this claim on its merits (see *CFC Investment, L.L.C. v. McLean*, 387 Ill. App. 3d 520, 526 (2008)). Thus, we turn to examine whether the trial court applied the proper burden of proof in this case. Whether the circuit court applied the correct burden of proof is a question of law we review *de novo*. *1350 Lake Shore Associates v. Healey*, 223 Ill. 2d 607, 627 (2006). Prior to discussing the proper burden of proof, however, we find it helpful to explain the process of supplementary proceedings, particularly where, as here, a citation had been served on a third party and an adverse claim was asserted as a result.

¶ 15    In Illinois, civil judgments are enforced through supplementary proceedings pursuant to section 2-1402 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1402 (West 2014)). Section 2-1402 of the Code "provides a mechanism by which a judgment creditor may initiate supplementary proceedings against a judgment debtor or a third party to discover the assets of a judgment debtor and apply those assets to satisfy an underlying judgment." *Stonecrafters, Inc. v. Wholesale Life Insurance Brokerage, Inc.*, 393 Ill. App. 3d 951, 958 (2009); 735 ILCS 5/2-1402 (West 2014). The supplementary proceeding is initiated by the service of a citation to discover assets. 735 ILCS 5/2-1402(a) (West 2014). After the citation is served, the judgment becomes a lien on all nonexempt personal property belonging to the judgment debtor. 735 ILCS 5/2-1402(m) (West 2014). During the course of supplementary proceedings, a judgment creditor may serve a citation to discover assets on a third party, requiring it to freeze the assets belonging to the judgment debtor. 735 ILCS 5/2-1402(f) (West 2014). The only relevant inquiries in a supplementary proceeding are (1) whether the judgment debtor possesses assets that should be applied to satisfy the judgment, and (2) whether a third party is holding assets of the judgment debtor that should be applied to satisfy the judgment. *Schak v. Blom*, 334 Ill. App. 3d 129, 133 (2002).

¶ 16    In this case, the parties do not dispute that JPMorgan possessed the assets of Colak, the judgment debtor, in two accounts at its institution. The parties further do not contest that Colak and Khoury were listed as the joint owners of the checking account. What is at issue in this matter is whether Khoury, a third-party garnishee, properly proved that she did not intend to gift to Colak the funds contained within the joint checking account and that, consequently, the funds were owned solely by her.

¶ 17    When a third party asserts rights to the property in question, the claimant's rights shall be

determined in accordance with the garnishment statute (735 ILCS 5/12-710 *et seq.* (West 2014)). *Bank of Aspen v. Fox Cartage, Inc.*, 126 Ill. 2d 307, 314 (1989); 735 ILCS 5/2-1402(g) (West 2014). Section 12-711 of the garnishment statute provides such "trial[s] shall be conducted as in other civil cases." 735 ILCS 5/12-711(c) (West 2014). Typically, in civil cases it is the plaintiff's burden to prove its case by a preponderance of the evidence. *In re Parentage of Rogan M.*, 2014 IL App (1st) 141214, ¶ 5. In matters involving the ownership of a joint bank account, however, when a "garnishee answers that a judgment debtor holds money in a joint bank account, this is sufficient proof to establish a prima facie case for the judgment creditor that the money in the account belonged to the judgment debtor." *Leaf v. McGowan*, 13 Ill. App. 2d 58, 65 (1957). The burden is then on the garnishee to prove what part, if any, of the funds in the joint bank account belonged to him or her. *Id.*

¶ 18    Khoury does not contest that the burden has shifted to her, but questions the proper burden by which she was to prove she alone owned the funds contained in the joint checking account. Khoury maintains, relying on section 12-711(c) of the garnishment statute, that she must only prove her burden by a preponderance of the evidence. In support of her stance, Khoury relies on *Leaf* and *Highsmith v. Department of Public Aid*, 345 Ill. App. 3d 774 (2004), which she contends sets forth her burden of proof is by a preponderance of the evidence.

¶ 19    As previously discussed, in *Leaf* this court held that a joint bank account may be garnished by a judgment creditor when one of the parties to the joint account is the judgment debtor. *Leaf*, 13 Ill. App. 2d at 65. In so holding, the *Leaf* court further stated that the burden was upon the other party to the joint account to establish what part, if any, of the funds in such account belonged to him or her. *Id.* In considering the testimony and evidence introduced, the *Leaf* court ultimately found the garnishee did not overcome the presumption that the funds

contained in the joint account belonged to both the judgment debtor and the garnishee. *Id.* The court considered the relationship between the parties and that a majority of the deposits in the account were made by the judgment debtor. *Id.* The court further observed that the garnishee's statements that all the funds in the account was earned by him and that the judgment debtor had withdrawn all of her funds from the joint account were unsupported. *Id.* The *Leaf* court, however, did not indicate the specific burden of proof of the third-party garnishee; whether it was by a preponderance of the evidence or by clear and convincing evidence. See *id.*

¶ 20    In *Highsmith*, which involved proceedings pursuant to the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2000)), the question before the court was whether the Illinois Department of Public Aid properly concluded, on documentary evidence alone, that the garnishee was the sole owner of an investment account where his son, the judgment debtor, was also listed as a joint owner of the account. *Highsmith*, 345 Ill. App. 3d at 776. The reviewing court first observed that, under an administrative rule, " 'The burden is on the joint owner to prove his or her share of the personal property or account through the production of documentary evidence.' " *Id.* at 777 (quoting 89 Ill. Adm. Code 104.110 (2002)). The court further observed that while the investment account was not held at a bank, "the general principles governing the determination of interests in joint bank accounts are closely analogous." *Id.* at 778. The *Highsmith* court then adopted the framework set forth in *Leaf* and further listed other relevant factors for the court to consider when determining ownership of a joint account: (1) the exercise and control over the funds; (2) contributions to the account, specifically whether the contribution by one codepositor constituted a gift to others and the proprietary source of a given contribution; (3) who paid taxes on the earnings from the account; and (4) the particular purpose, if any, for which the account was established. *Id.* at 780.

¶ 21    The *Highsmith* court ultimately concluded that the garnishee met his burden of proof of sole ownership of the account. *Id.* Specifically, the garnishee proved through documentary and testimonial evidence that: the account was held in his name along with his son's; his son would have been a young child when the account was establish; only he made contributions to the account and paid taxes on earnings from the account; his son never exercised any control over the account; and it was established to finance his son's education. *Id.* The court further held that the administrative procedure restricting proof to documentary evidence was not suitable to the determination of ownership of a joint bank account and violated due process. *Id.* at 781. However, in rendering its opinion, the *Highsmith* court, like the *Leaf* court, did not indicate the garnishee's specific burden of proof. See *id.* at 780. Thus, neither *Leaf* nor *Highsmith* support Khoury's claim that she must prove her sole ownership of the joint checking account by a preponderance of the evidence.

¶ 22    In contrast, Gataric argues the proper burden of proof, particularly where ownership of the funds in a joint bank account is involved, is by clear and convincing evidence. Gataric relies primarily on the cases cited favorably by the trial court in its written order involving the determination of ownership of joint bank accounts, namely *In re Estate of Harms*, 236 Ill. App. 3d 630 (1992), and *In re Estate of Teall*, 329 Ill. App. 3d 83 (2002). In reply, Khoury takes issue with Gataric and the trial court's reliance on these cases. According to Khoury, these estate cases deal with " 'convenience accounts' " and involve issues of fiduciary duty and fraud. Khoury argues that based on the facts of these cases, it necessarily follows that the courts would apply a higher burden of proof. Khoury contends, however, that fiduciary duty and fraud are not issues in the matter at bar and therefore the lower burden of a preponderance of the evidence applies here.

¶ 23    Notably, *Harms* does not involve issues of fraud or fiduciary duty. See *Harms*, 236 Ill.

App. 3d at 639. In that case, two grandchildren initiated citation proceedings on behalf of their grandmother's estate seeking a determination of right and title to various bank accounts held jointly in the name of the decedent and one or both of her two daughters. *Id.* at 631. The grandchildren argued these accounts were "convenience accounts," which the court described as "an account, apparently held in some form of joint tenancy, where in fact the creator did not intend for the other tenant to have any interest, present or future, but had some other intent in creating the account." *Id.* at 634. In determining whether these accounts were convenience accounts, the court set forth the rule that, "At the creation of a statutory joint tenancy, a presumption of donative intent arises and a party claiming adversely to the instrument creating the joint account has the burden of proving by clear and convincing evidence that a gift was not intended." *Id.* The court ultimately concluded that the evidence was insufficient to establish the accounts were convenience accounts. *Id.* at 636.

¶ 24    Similarly, *In re Estate of Teall* also considered the presumption that arises when a party asserts a joint account is merely a "convenience account." 329 Ill. App. 3d. at 87-88. The *Teall* court reiterated the "presumption of donative intent" as set forth in *Harms* and that it must be overcome by a demonstration of "clear and convincing evidence that a gift was not intended." (Internal quotation marks omitted.) *Id.* at 87. The *Teall* court further stated that "absent evidence of abuse or betrayal of confidence, a finding of a fiduciary relationship between joint tenants does not rebut the presumption of donative intent." *Id.* at 88.

¶ 25    In this case, Khoury essentially argues that the joint checking account, of which Colak is a co-owner, is a convenience account. Khoury argued before the trial court and now on appeal that she added Colak as a joint owner of the checking account in order to transfer funds to him as part of a short-term loan. Khoury further argued that thereafter, Colak deposited funds into the

joint checking account as repayment of the loan. Thus, based on Khoury's own argument, it was Khoury's burden by clear and convincing evidence to establish the checking account was one of convenience. See *Harms*, 236 Ill. App. 3d at 634; *Teall*, 329 Ill. App. 3d at 87.

¶ 26    The trial court did not explicitly set forth in its December 18, 2014, order the standard it utilized when determining whether Khoury met her burden of proof. As noted by Khoury, however, the trial court cited *Teall* favorably in its written order denying her motion to reconsider and, as previously discussed, *Teall* applied the clear and convincing burden of proof. See *id.* at 87. Khoury also acknowledges she has not provided this court with a transcript of the proceedings, a bystander's report, or an agreed statement of facts that would further indicate the burden of proof employed by the trial court. It is Khoury's burden, as the appellant, to provide us with a sufficient record on appeal. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Without such a record, we must presume the order entered by the trial court was in conformity with the law. *Id.* Accordingly, based on the limited record before us, we conclude the trial court used the proper burden of proof in this case.

¶ 27    Khoury next argues the trial court's finding that she was not the sole owner of the funds contained in the joint checking account was against the manifest weight of the evidence. Khoury maintains that the affidavit she attached to her response to the motion for turnover of funds along with the bank statements she provided sufficiently demonstrated her sole interest in the joint checking account. Khoury further argues that at the evidentiary hearing Gataric did not refute the evidence or present any contradictory evidence and, therefore, the trial court erred in denying her adverse claim and granting Gataric's motion to turnover funds.

¶ 28    When a trial of the issues is conducted in a supplementary proceeding, the trial court's decision of the issues and contested facts is reviewed under the manifest weight of the evidence

standard. *Buckner v. Causey*, 311 Ill. App. 3d 139, 142 (1999); *In re Marriage of Eberhardt*, 387 Ill. App. 3d 226, 238 (2008). Similarly, a finding regarding the ownership of funds contained in a joint account is reviewed under the manifest weight of the evidence standard. *Teall*, 329 Ill. App. 3d at 88. A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence. *Buckner*, 311 Ill. App. 3d at 143.

¶ 29    Our supreme court has long recognized that to support a claim of error, the appellant has the burden to present a sufficiently complete record. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005). "From the very nature of an appeal it is evident that the court of review must have before it the record to review in order to determine whether there was the error claimed by the appellant." *Foutch*, 99 Ill. 2d at 391. "An issue relating to a circuit court's factual findings and basis for its legal conclusions obviously cannot be reviewed absent a report or record of the proceeding." *Corral*, 217 Ill. 2d at 156. Without an adequate record preserving the claimed error, the court of review must presume the circuit court's order had a sufficient factual basis and that it conforms with the law. *Id.* at 157.

¶ 30    "[W]hen the record on appeal is incomplete, a reviewing court should actually 'indulge in every reasonable presumption favorable to the judgment from which the appeal is taken, including that the trial court ruled or acted correctly.' " *Smolinski v. Vojta*, 363 Ill. App. 3d 752, 757-58 (2006) (quoting *People v. Majer*, 131 Ill. App. 3d 80, 84 (1985)). This presumption even operates to the extent that where the record lacks information of evidence presented at a hearing, a reviewing court will not assume none was heard and that the court's order, therefore, was improper. See *Webster v. Hartman*, 195 Ill. 2d 426, 433 (2001). Instead, " 'it [will] presume[ ] that the court heard adequate evidence to support the decision that was rendered' unless the

record indicates otherwise." *Id.* (quoting *Skaggs v. Junis*, 28 Ill. 2d 199, 201-02 (1963)).

¶ 31    Here, the record indicates the trial court conducted an evidentiary hearing and heard testimony from Khoury and her husband, Nassar. We, however, do not know what their testimony consisted of nor do we know whether the documents attached to Khoury's affidavit were introduced into evidence. There is no transcript of this proceeding in the record and the trial court made no findings of fact in its written order. As previously discussed, however, this lack of factual findings does not mean we must reverse the trial court. See *Webster v. Hartman*, 195 Ill. 2d at 433. Instead, it means we must presume the court heard adequate evidence to support its decision. See *id.* Therefore, based on the inadequacy of the record in this case, we must presume the result below was correct and affirm the trial court's judgment. See *In re Marriage of Gulla*, 234 Ill. 2d 414, 423-24 (2009).

¶ 32    We note that Khoury also argues on appeal that the trial court's factual errors further support her argument that the trial court's decision was against the manifest weight of the evidence. We observe that in its written order denying Khoury's motion to reconsider, the trial court indicated that its misstatements of certain facts had no bearing on its decision. In acknowledging its mistake, the trial court restated the background information and corrected its prior errors.[3] Furthermore, Khoury cites no authority that would require us to reverse the trial court's order under these circumstances. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013). Accordingly, we affirm the trial court's judgment.

¶ 33                              CONCLUSION

¶ 34    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

---

[3]We note that the April 2, 2015, order denying Khoury's motion to reconsider continued to state that Khoury's adverse claim was supported by the affidavit of Nassar. While Nassar's affidavit is not included in the record on appeal, Khoury's response to the motion for turnover of funds does indicate that her adverse claim "is supported by the affidavits of Vanya Khoury and Nasser [*sic*] Khoury and said affidavits are incorporated herein in their entirety."

¶ 35    Affirmed.