2025 IL App (1st) 250033

SECOND DIVISION
November 4, 2025

Nos. 1-25-0033, 1-25-0120, cons.

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| SMS FINANCIAL CH, LLC, as Assignee of BMO Harris, N.A., f/k/a Harris N.A., as Assignee of the Federal Deposit Insurance Corporation, as Receiver for Amcore Bank, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) ) | |
| v. | ) ) | No. 2010 L 50115 |
| CHRISTOPHER FEURER, | ) ) | |
| Defendant | ) ) | |
| (Hudson Investment, LLC, Citation Respondent-Appellant). | ) ) | Honorable James E. Hanlon, Jr., Judge, presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Van Tine and Justice Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff SMS Financial CH, LLC (SMS), filed a petition seeking an order directing citation respondent-appellant Hudson Investment, LLC (Hudson), to turn over defendant Christopher Feurer's assets that had been transferred to Hudson. SMS moved for summary judgment on count I, and Hudson filed a combined cross-motion for summary judgment on count I and an additional summary judgment motion on count II. The trial court granted SMS's motion and denied Hudson's. Hudson now appeals, contending first that the court erroneously found, pursuant to

1-25-0033, 1-25-0120 (cons.)

sections 12-801 and 12-803 of the Wage Deduction Statute[1] (735 ILCS 5/12-801 to 12-819 (West 2022)) and section 2-1402 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1402 (West 2022)),[2] that Feurer's wages that his employer paid to Hudson were no longer exempt. Hudson further contends that the court erred in denying its motion for summary judgment on count II on the basis that Feurer's transfer of his wages to Hudson constituted a fraudulent transfer. For the following reasons, we dismiss this appeal in part and affirm in part the judgment of the trial court.

¶ 2                                   BACKGROUND

¶ 3     The parties in this appeal are numerous, and the underlying facts are labyrinthine. Fortunately, the question before us is somewhat straightforward: whether a judgment debtor's wages, once paid, are permanently exempt from a judgment creditor's collection efforts. For the following reasons, we hold that they are not.

¶ 4                                   The Parties

¶ 5     Defendant Christopher Feurer has been the chief executive officer of Jameson Realty Companies, the Chicago affiliate of Sotheby's International real estate brokerage group, since 2008. Feurer stated in a subsequent affidavit that "the Jameson companies" have had several reorganizations over the history of this action and that "Jameson Real Estate Brokerage, LLC," is currently the main operating company and Feurer's employer.[3] On January 30, 2002, Peerage US Corporation acquired a majority interest in Jameson, and as a result, Feurer obtained an "indirect one percent interest" in Jameson via a new holding company, Cohiba Holdings, LLC (Cohiba). Feurer is the sole member of Cohiba.

---

[1]  For the sake of simplicity, we refer to the various statutory sections under article XII, part 8, of the Code of Civil Procedure (735 ILCS 5/12-801 to 12-819 (West 2022)) as the "Wage Deduction Statute."

[2]  Hudson erroneously cites this statute as "735 ILCS 5/12-1202."

[3]  For clarity, we refer to all Jameson entities as simply "Jameson."

¶ 6     Citation respondent Hudson is a limited liability company that is owned by Feurer's wife, Kristen S. Feurer (Kristen), and the Kristen S. Feurer Revocable Trust. Florida Financial Group, LLC (FFG), was organized on December 7, 2010, and Lucky Lumper Recovery, LLC (Lucky Lumper), was organized on July 25, 2019. Kristen's stepfather,[4] Robert Silver (Silver), is the manager and sole member of both FFG and Lucky Lumper.

¶ 7                           The Amcore/SMS Judgment

¶ 8     On January 28, 2010, the trial court entered a judgment by confession in favor of Amcore Bank, N.A. (Amcore), and against Feurer for $245,627.15, in connection with a loan default. On March 4, 2010, Amcore served a citation to discover assets on Feurer.

¶ 9     On June 15, 2010, the trial court issued an order granting a motion to substitute Harris N.A. (Harris), "as assignee of Amcore ***" as party plaintiff. Harris' motion stated that the Federal Deposit Insurance Corporation (FDIC) "took over" Amcore on April 23, 2010, and Harris subsequently acquired the assets of Amcore, including the judgment against Feurer.

¶ 10    On August 4, 2011, BMO Harris Bank N.A. (BMO) filed a motion to correct its name from Harris N.A. to BMO Harris Bank N.A., advising the trial court that this correction reflected a name change effective July 6, 2011. The court granted the motion on August 10, 2011.

¶ 11                          The FFG and Lucky Lumper Judgments

¶ 12    On August 12, 2011, FFG filed two breach-of-contract complaints in the circuit court of Cook County.[5] Both complaints alleged breach of contract with respect to the nonpayment of promissory notes. The first complaint (case No. 2011 L 008478) (the 8478 complaint) was against

---

[4] Kristen admitted in a sworn pleading that Silver was her "stepfather." We note, however, that FFG and Lucky Lumper both denied SMS's allegation that Silver was Kristen's "father."

[5] This court may take judicial notice of the public documents that are included in the records of other courts. See *In re Linda B.*, 2017 IL 119392, ¶ 31 n.7; *Empire Indemnity Insurance Co. v. Chicago Province of the Society of Jesus*, 2013 IL App (1st) 112346, ¶ 20 n.4; Ill. R. Evid. 201 (eff. Jan. 1, 2011); R. 803(8) (eff. Jan. 25, 2023).

1-25-0033, 1-25-0120 (cons.)

Feurer alone and the second complaint (case No. 2011 L 008479) (the 8479 complaint) was against Feurer and Kristen. The 8478 complaint alleged that on August 21, 2009, Feurer executed a $3.4 million promissory note with Downers Grove National Bank (the Bank) but failed to make any payments. The terms of the note, which FFG attached as an exhibit to its complaint, indicated that the interest rate on the one-year note would be the Bank's prime rate plus 1% (*i.e.*, 4.25%)[6] but the default rate would be 9.25%. According to FFG, the total balance of principal and interest due was $3,572,183.53, as of July 31, 2011. On December 28, 2010, FFG agreed to pay the Bank $75,000 in exchange for "all rights that [the Bank] had under the Note, and all related loan documents related thereto." Silver's affidavit, which was also attached to FFG's complaint, stated that the interest charged on the note from December 31, 2010, through July 31, 2011, was only at a "simple interest rate of 6%" and not the note's default rate of 9.25%. On October 11, 2011, the trial court entered a judgment of $3,572,183.53 in favor of FFG and against Feurer.

¶ 13   With respect to the 8479 complaint, FFG alleged that Feurer and Kristen executed a $500,000 promissory note with "The PrivateBank and Trust Company" (PrivateBank) on September 10, 2007. This note was then renewed on September 10, 2008. The terms of this one-year note, which FFG also attached as an exhibit to the complaint, indicated that the interest rate would initially be 6% but the default rate would be 12%. According to FFG, the total balance of principal and interest due was $518,246.58, as of July 31, 2011. On December 28, 2010, FFG agreed to pay PrivateBank $100,000 in exchange for "all rights" that PrivateBank had under the 2007 and 2008 notes. Silver's affidavit similarly stated that the interest charged on the note from December 31, 2010, through July 31, 2011, was only at a "simple interest rate of 6%" and not the

---

[6] The "prime rate" in 2009 was 3.25%. See *Bank Prime Loan Rate Changes: Historical Dates of Changes and Rates (PRIME)*, Fed. Rsrv. Bank of St. Louis (Jan. 8, 2025), https://fred.stlouisfed.org/series/PRIME [https://perma.cc/MBU9-SLA4].

4

default rate of 12%. On October 17, 2011, the trial court entered a judgment of $518,246.58 in favor of FFG and against Feurer.

¶ 14 On May 18, 2012, Northbrook Bank & Trust (Northbrook Bank) filed a complaint (under case No. 2012 L 005488) against Feurer, alleging breach of contract with respect to an unpaid $500,000 promissory note bearing an initial interest rate of 9% and a default interest rate of 19%. Northbrook Bank alleged that Feurer failed to make the lump-sum payment of principal and accrued interest on the due date of June 23, 2010. Northbrook Bank sought damages in the amount of $496,117 in outstanding principal plus interest, costs, and other relief. On August 31, 2012, the trial court entered judgment in favor of Northbrook Bank and against Feurer in the amount of $594,055.44. Lucky Lumper subsequently purchased this judgment in January 2020.

¶ 15 On November 21, 2013, the trial court entered an agreed order dismissing BMO's citation action in exchange for, *inter alia*, Feurer directing an unrelated third party escrow agent to pay $10,000 to BMO.

¶ 16 Subsequent Proceedings

¶ 17 On January 30, 2020, Feurer entered into an employment agreement with Jameson, providing in pertinent part that he would be paid an annual salary of $425,000 with 3% annual increases. Feurer directed Jameson to deposit his salary directly into Hudson's Citibank account. Feurer's wife, Kristen, has sole signatory authority over the Hudson Citibank account and uses the funds to pay the family's and Feurer's personal living expenses.

¶ 18 On March 23, 2021, BMO assigned the judgment to SMS. SMS filed the assignment with the trial court on April 1, 2021. On April 27, 2021, SMS filed a petition to revive judgment. SMS stated that the original judgment amount ($245,627.15) plus accrued interest less credits (as of April 22, 2021) totaled $248,417.12. SMS added that, as of the filing date of the petition, the entire principal balance of the judgment remained outstanding. SMS further alleged that it had

reason to believe that, since the dismissal of the citations, Feurer had obtained property and income that SMS was entitled to reach to satisfy the outstanding judgment. SMS added that it believed that third parties, including "Jameson Realty [*sic*] Estate, LLC," were indebted to Feurer.

¶ 19 SMS further explained that Feurer is the manager of Jameson Real Estate, LLC, which does business under various assumed names, including Jameson Sotheby's International Realty, Jameson Commercial, and Jameson Real Estate. SMS noted that Feurer is also the chief executive officer (CEO) of Jameson Sotheby's International Realty, Jameson Commercial Realty, and other affiliated or related entities. SMS then recounted that, when the prior citation proceedings were pending in 2013, Feurer was the CEO of "Jameson Real Estate" but represented he was not being compensated because the company did not have sufficient funds to pay his salary.

¶ 20 SMS observed, however, that the website of Jameson Sotheby's International Realty indicated that it has 828 offices in 61 countries and the website of Jameson Commercial described itself as "the leading commercial real estate company in Chicago" with billions of dollars in transactions. SMS concluded that those entities appeared to have sufficient assets to pay Feurer a salary and that Feurer would thus have sufficient assets to satisfy the outstanding judgment. On July 1, 2021, following a hearing, the trial court granted both SMS's petition and a separate motion by SMS to substitute its name as the party plaintiff in place of BMO.

¶ 21 Also on July 1, 2021, the trial court entered a wage deduction order in favor of Lucky Lumper and against Feurer (case No. 2012 L 005488). On July 9, 2021, the court entered two wage deduction orders in favor of FFG and against Feurer (case Nos. 2011 L 008478 and 2011 L 008479).

¶ 22 On February 10, 2022, the trial court entered written "charging orders" stating in substance that SMS's interest in both (1) the distributions to Feurer from Jameson and (2) Feurer's "membership, economic, distributional, and all other interest" in Cohiba is "subordinate to any

6

prior orders and liens imposed," including the previous charging orders entered in favor of FFG and Lucky Lumper. The orders further directed that neither Cohiba nor Jameson would make any payments to SMS until all prior charging orders were "paid and satisfied in full."

¶ 23    On May 6, 2022, SMS served Hudson with a third-party citation to discover assets. Among other things, the citation warned Hudson of the following:

> "YOU ARE PROHIBITED from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to [SMS] or to which [SMS] may be entitled or which may be acquired by or become due to [SMS] and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to [SMS], until further order of court or termination of the proceedings."

The citation, however, further advised Hudson that it was not required to withhold more than double the amount of the judgment.

¶ 24    On July 27, 2022, Hudson filed its response to SMS's citation. Hudson stated that it holds "no accounts or property of judgment debtor *** Feurer."

¶ 25    On September 2, 2023, SMS filed a petition (1) for a turnover order of Feurer's assets that had been transferred to Hudson and (2) to deny the liens of FFG and Lucky Lumper. SMS's petition comprised three counts: (1) an allegation that Hudson is liable to SMS for the transfers made in violation of the third-party citation, (2) a claim that the transfers of Feurer's assets from Jameson to Hudson were void pursuant to the Uniform Fraudulent Transfer Act (740 ILCS 160/1 *et seq.* (West 2022)), and (3) a claim that FFG's and Lucky Lumper's liens on Feurer's assets must be set aside as fraudulent.

7

¶ 26    On April 17, 2024, SMS filed its motion for summary judgment on count I of its petition. SMS argued that there were no genuine issues of material fact that Hudson had violated the citation order by failing to "freeze" Feurer's assets (namely, his compensation that had been transferred from Jameson to Hudson) while the citation proceedings were pending.

¶ 27    On May 29, 2024, Hudson filed its combined cross-motion for summary judgment on count I and motion for summary judgment on count II.  As to count I, Hudson argued that, pursuant to the Wage Deduction Statute, the funds in the Hudson Citibank account consisted of Feurer's wages, which retained their exempt status even after the transfer from Jameson.  As to count II, Hudson argued that Feurer could not fraudulently transfer exempt property because it was unavailable to satisfy creditor claims in the first instance.

¶ 28    On December 17, 2024, the trial court issued a written decision granting SMS's motion for summary judgment on count I and denying Hudson's motion for summary judgment on both counts.  The order noted that (1) SMS appeared for the hearing "through counsel via Zoom and Hudson *** appear[ed] through counsel in open court," (2) the court heard "argument on the respective motions," and (3) it was "fully advised."  On January 7, 2025, Hudson filed a notice of appeal challenging this order, which was docketed under appeal No. 1-25-0033.

¶ 29    On January 16, 2025, the court issued a written order finding, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), that there was no just reason to delay appeal of the judgment, but the court added that it was "stay[ing] enforcement pending the resolution of the appeal and the resolution of the adverse claims filed by Lucky Lumper Recovery, LLC, and Florida Financial Group, LLC."  On January 21, 2025, Hudson filed a notice of appeal directed against this order, which was docketed as appeal No. 1-25-0120.  We granted Hudson's motion to consolidate these appeals on March 26, 2025.

¶ 30                                    ANALYSIS

¶ 31    On appeal, Hudson contends that the trial court erred in granting SMS's summary judgment

motion on count I.  According to Hudson, the court erroneously found that, pursuant to the Wage

Deduction Statute and section 2-1402 of the Code, 85% of Feurer's wages remained exempt even

after Jameson paid those wages to Feurer via transfer (at Feurer's direction) to Hudson's Citibank

account.  Hudson further challenges the court's denial of its summary judgment motion with

respect to count II.  Hudson argues in essence that, since Feurer's "interest in exempt property is

not subject to avoidance as a fraudulent transfer," Jameson's transfer of Feurer's remaining wages

to Hudson cannot be a fraudulent transfer because those wages remained exempt and unavailable

to satisfy SMS's claims.  Hudson asks that this court remand the matter with directions to deny

SMS's summary judgment motion and grant Hudson's motion.

¶ 32                                    Jurisdiction

¶ 33    As a preliminary matter, we address SMS's argument that this court lacks jurisdiction over

count II, which Hudson has argued on appeal before this court.  Regardless of whether a party has

raised the issue, we have an independent duty to consider whether we have jurisdiction and dismiss

an appeal for lack of jurisdiction.  *Williams Montgomery & John Ltd. v. Broaddus*, 2017 IL App

(1st) 161063, ¶ 32 (citing *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539 (1984)).

¶ 34    Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) allows appeals from final judgments

as a matter of right.  See also Ill. Const. 1970, art. VI, § 6.  "Subject to certain exceptions, an appeal

can be taken in a case only after the circuit court has resolved all claims against all parties."  *State*

*Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 556 (2009).

Rule 304(a) provides one such exception:  It states in relevant part that

> "[i]f multiple parties or multiple claims for relief are involved in an
>
> action, an appeal may be taken from a final judgment as to one or

9

more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).

The written finding may be made either at the time of, or after the entry of, a final judgment. See *Board of Trustees of Community College District No. 508 v. Rosewell*, 262 Ill. App. 3d 938, 949 (1992).

¶ 35    "By the rule's own terms, a Rule 304(a) finding can confer appealability *only* on a judgment that is already *final*." (Emphases added.) *In re Marriage of Duggan*, 376 Ill. App. 3d 725, 735 (2007). A judgment or order is "final" if it disposes of the rights of the parties, either on the entire case or on some definite and separate part of the controversy. *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 502 (1997). In other words, a final order terminates " 'the litigation between the parties on the merits of the cause, so that, if affirmed, the trial court has only to proceed with execution of the judgment.' " *Kellerman v. Crowe*, 119 Ill. 2d 111, 115 (1987) (quoting *Village of Niles v. Szczesny*, 13 Ill. 2d 45, 48 (1958)).

¶ 36    Ordinarily, the denial of a motion for summary judgment is not appealable because such orders are interlocutory in nature. *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 357 (1999). An exception to this rule has been recognized where cross-motions for summary judgment have been filed on the same claim and one party's motion is granted while the opposing motion is denied, thereby disposing of all issues in the case.

¶ 37    In this case, although there were cross-motions for summary judgment on count I, there were no cross-motions for summary judgment on count II; rather, Hudson alone filed a motion for summary judgment on that specific count. Count II alleged that the transfer of Feurer's assets (namely, his compensation) from Jameson to Hudson were in violation of the Uniform Fraudulent

Transfer Act (740 ILCS 160/1 *et seq.* (West 2022)). By contrast, count I merely alleged that Hudson was liable to SMS for the amounts Hudson purportedly transferred in violation of the citation order. Since the denial of Hudson's motion for summary judgment on count II did not dispose of all the issues on that count, that part of the court's order was not a final and appealable order, even if the trial court had made a Rule 304(a) finding. See *Duggan*, 376 Ill. App. 3d at 735. Therefore, we dismiss Hudson's appeal from the denial of its motion for summary judgment on count II for want of jurisdiction.

¶ 38    SMS further argues that we should dismiss Feurer as a party appellant for two reasons: Count I was only directed at Hudson, and Feurer did not file a response to either SMS's or Hudson's motions for summary judgment. We further note that Feurer did not file a brief in this appeal, and we can discern no independent argument in the appellant briefs that would arguably pertain to him, thus resulting in his forfeiture of any claim on appeal. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). As such, we deny as moot SMS's request that we dismiss Feurer as a party appellant.

¶ 39                            The Record on Appeal

¶ 40    Next, we must discuss the state of the record on appeal. There is no transcript from the hearing on the cross-motions for summary judgment (which took place on August 15, 2024) nor any other hearing date. Illinois Supreme Court Rule 321 (eff. Oct. 1, 2021) and Rule 324 (July 1, 2017) require an appellant to provide a complete record on appeal, including a certified copy of the report of proceedings. If a verbatim transcript is unavailable, the appellant may file an acceptable substitute, such as a bystander's report or an agreed statement of facts, as provided for in Illinois Supreme Court Rule 323(c), (d) (eff. July 1, 2017). Supreme court rules are not mere suggestions; they are rules that must be followed. *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57. The burden of providing a sufficient record on appeal rests with the appellant (here,

Hudson). *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005); *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). In the absence of such a record, we presume the trial court acted in conformity with the law and with a sufficient factual basis for its findings. *Foutch*, 99 Ill. 2d at 392. Furthermore, any doubts arising from an incomplete record will be resolved against the appellant. *Id.* This is particularly true "when the judgment order states that the court is fully advised in the premises." *Dell'Armi Builders, Inc. v. Johnston*, 172 Ill. App. 3d 144, 149 (1988).

¶ 41 Here, there is no transcript (or acceptable substitute) for the hearing on August 15, 2024, despite the fact that the court's order following the hearing stated that the parties had appeared for argument (either via Zoom or in person) and that the court was "fully advised." As noted above, the burden of providing a sufficient record on appeal rests with the appellant (*i.e.*, Hudson). In the absence of such a record, we must (1) presume the trial court acted in conformity with the law and with a sufficient factual basis for its findings and (2) resolve any doubts arising from an incomplete record against the appellant (*Foutch*, 99 Ill. 2d at 391-92). We may affirm the court's judgment on this basis alone. Although the standard of review for summary judgment is *de novo* (see *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992)), Rule 323 does not provide an exemption based upon the standard of review of an issue raised before this court (see Ill. S. Ct. R. 323 (eff. July 1, 2017)). Furthermore, to examine, for example, whether Hudson forfeited its arguments on appeal by failing to raise it before the trial court (or whether SMS in fact conceded that the Wage Deduction Statute exempts the funds Hudson received), we must have a transcript or acceptable substitute to review. It is well established that arguments not raised before the trial court are forfeited in this court. See, *e.g.*, *Jeanblanc v. Sweet*, 260 Ill. App. 3d 249, 254 (1994) (noting that issues raised for the first time on appeal, "even from a summary judgment order," are deemed waived); *Hytel Group, Inc. v. Butler*, 405 Ill. App. 3d 113, 127 (2010) ("A reviewing court will not consider arguments not presented to the trial court. [Citation.] That

the argument concerns the constitutionality of a statute does not make a difference.").  In any event, and with these limitations in mind, we now turn to the substance of Hudson's claim.

¶ 42                                    SMS's Motion for Summary Judgment

¶ 43    Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 2022).  Summary judgment is a drastic measure and should only be granted when the moving party's right to judgment is "clear and free from doubt."  *Outboard Marine*, 154 Ill. 2d at 102.  To determine whether there is a genuine issue of material fact, we construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the opponent. *Id.* at 131-32.  Unsupported conclusions, opinions, or speculation, however, do not raise a genuine issue of material fact.  *Id.* at 132.

¶ 44    Since the parties filed cross-motions for summary judgment, they conceded that no material questions of fact existed and that only a question of law was involved that the court could decide based on the record.  *Best Buy Stores, L.P. v. Department of Revenue*, 2020 IL App (1st) 191680, ¶ 12 (citing *Pielet v. Pielet*, 2012 IL 112064, ¶ 28).  Nonetheless, the mere filing of cross-motions for summary judgment does not conclusively establish that there is no issue of material fact, nor is the trial court obligated to enter summary judgment for either party.  *Pielet*, 2012 IL 112064, ¶ 28.  We review the trial court's decision as to cross-motions for summary judgment *de novo*.  *Id.* ¶ 30; see *Outboard Marine*, 154 Ill. 2d at 102 (trial court's entry of summary judgment reviewed *de novo*).

¶ 45    The question before us concerns the construction of sections 12-801 and 12-803 of the Wage Deduction Statute and section 2-1402 of the Code.  The principles of statutory construction are well established.  When construing a statute, our goal is to " 'ascertain and give effect to the

intent of the legislature.' " *Trapp v. City of Burbank Firefighters' Pension Fund*, 2024 IL App (1st) 231311, ¶ 16 (quoting *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009)). This inquiry begins with the language of the statute, " 'the best indicator of legislative intent.' " *Id.* (quoting *Kean*, 235 Ill. 2d at 361). Where the language in the statute is clear and unambiguous, we apply the statute as written without resort to extrinsic aids of statutory construction. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 6-7 (2009). Nonetheless, it is appropriate to employ a dictionary to ascertain the meaning of an otherwise undefined word or phrase. *Id.* at 8.

¶ 46    Since all provisions of a statutory enactment are viewed as a whole, we interpret the statute in light of other relevant portions of the statute and do not construe words and phrases in isolation. *Carver v. Sheriff of La Salle County*, 203 Ill. 2d 497, 507-08 (2003). We must further presume that the General Assembly did not intend absurdity, inconvenience, or injustice. *Id.* at 508. In essence, we must employ a " 'practical and common-sense construction.' " *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25 (quoting *Automatic Voting Machine Corp. v. Daley*, 409 Ill. 438, 447 (1951)). The interpretation of a statute is a question of law that we review *de novo*. *Id.* ¶ 16.

¶ 47    Section 12-803 of the Wage Deduction Statute provides in pertinent part that the wages, salary, commissions, and bonuses subject to collection under a deduction order for any work week shall be the lesser of "(1) 15% of such *gross amount paid* for that week or (2) the amount by which disposable earnings for a week exceed 45 times the Federal Minimum Hourly wage." (Emphasis added.) 735 ILCS 5/12-803 (West 2022). Section 12-801 defines "wages" as "any hourly pay, salaries, commissions, bonuses, or other compensation *owed by an employer* to a judgment debtor." (Emphasis added.) *Id.* § 12-801.

¶ 48    Section 2-1402 of the Code ("Citations to discover assets") states in part as follows:

> "(c) When assets or income of the judgment debtor not
>
> exempt from the satisfaction of a judgment, a deduction order or

garnishment are discovered, the court may, by appropriate order or judgment:

&#42;&#42;&#42;

(2) Compel the judgment debtor to pay to the judgment creditor or apply on the judgment, in installments, a portion of his or her income &#42;&#42;&#42; as the court may deem proper, having due regard for the reasonable requirements of the judgment debtor and his or her family, if dependent upon him or her, as well as any payments required to be made by prior order of court or under wage assignments outstanding; provided that the judgment debtor shall not be compelled to pay income which would be considered exempt as wages under the Wage Deduction Statute. &#42;&#42;&#42;

&#42; &#42; &#42;

(f)(1) The citation may prohibit the party to whom it is directed from making or allowing any transfer or other disposition of &#42;&#42;&#42; any property not exempt from the enforcement of a judgment therefrom, a deduction order or garnishment, belonging to the judgment debtor &#42;&#42;&#42;, and from paying over or otherwise disposing of any moneys not so exempt which are due or to become due to the judgment debtor, until the further order of the court or the termination of the proceeding, whichever occurs first. &#42;&#42;&#42; The court may punish any party who violates the restraining provision of a citation as and for a contempt, or if the party is a third party may

15

enter judgment against him or her in the amount of the unpaid portion of the judgment and costs allowable under this Section, or in the amount of the value of the property transferred, whichever is lesser." *Id.* § 2-1402(c)(2), (f)(1).

Section 2-1402(j), however, states in part that "This Section does not grant the power to any court to order installment or other payments from *** any property exempt by statute from the enforcement of a judgment thereon, a deduction order, garnishment, *** process or other levy or seizure." *Id.* § 2-1402(j).

¶ 49 In this case, the trial court did not err in granting summary judgment in favor of SMS on count I. There is no dispute that Jameson duly withheld 15% of Feurer's wages and transferred the remaining 85% to the Hudson Citibank account. The unambiguous language of section 12-801 of the Wage Deduction Statute defines "wages" in part as compensation "owed by" an employer to a judgment debtor (here, Feurer, Jameson's employee). *Id.* § 12-801. Plainly, once Feurer received his compensation from Jameson (via Feurer's direction to transfer his compensation to Hudson), it was no longer "owed by" Jameson, and consequently it ceased to be "wages" as defined in section 12-801. At that point, the funds in the Hudson account were subject to turnover as prescribed in section 2-1402 of the Code. The parties also do not dispute that, after being served with the citation, Hudson nevertheless continued to transfer funds from its account to pay for Feurer's personal expenses and those of his family. This was in violation of section 2-1402(f)(1), and the court properly entered judgment against Hudson pursuant to that section. See *id.* § 12-1402(f)(1).

¶ 50 Hudson argues that section 12-803 of the Wage Deduction Statute limiting wage deductions to 15% of the gross amount of wages "paid" indicates that the remaining 85% of the gross amount of wages must remain exempt after their payment. We disagree. The Wage

16

Deduction Statute applies to wages owed by an employer (*id.* § 12-801). Once the employer pays the employee's wages, those wages are no longer in the employer's possession. Hudson's argument, however, implies that, after paying the wages to an employee, the employer would then have to claw back—from a judgment creditor—the remaining 85% of the gross amount of the paid wages. Hudson provides no indication (and we have found none) that the legislature intended such an inconvenience. As noted above, we may not presume that the legislature intended absurdity or inconvenience. *Carver*, 203 Ill. 2d at 508. We note that a federal district court has similarly found that there is no language in the Wage Deduction Statute indicating that money or other property that comes from wages is exempt from levy "regardless of when the wages were earned." *PNC Bank, N.A. v. Udell*, No. 16 C 5400, 2017 WL 3478814, at \*7 (N.D. Ill. Aug. 13, 2017). We agree with the *Udell* court's finding that, if that were the case, "a debtor's savings derived from his wages could never be reached to satisfy a judgment, which would make no sense." *Id.* Rather, employing a "practical and common-sense construction," as we must (internal quotation marks omitted) (*Hartney Fuel Oil*, 2013 IL 115130, ¶ 25), it is clear that section 12-803 provides a straightforward formula for employers to determine how much of an employee's wages are exempt under a collection order. Hudson's argument on this point is therefore unavailing.

¶ 51 Although Hudson argues that the funds transferred into its Citibank account should remain exempt because the entirety of the transferred funds are necessary to pay for the family's living expenses, Hudson's concerns are unwarranted. Section 2-1402(c)(2) of the Code empowers the trial court—as it "may deem proper"—to consider "the reasonable requirements of the judgment debtor and his or her family" prior to ordering a judgment debtor to pay a portion of his income in installments to satisfy a judgment creditor's claim. 735 ILCS 5/2-1402(c)(2) (West 2022).

¶ 52 We further reject Hudson's reliance upon *Rowe v. Gold*, 283 Ill. App. 3d 1113 (1996) (table) (unpublished order under Illinois Supreme Court Rule 23). *Rowe* was an unpublished order

from 1996, and orders such as those issued before 2021 may not be cited as precedent "except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case," none of which apply here. See Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023). Hudson also cites several cases enforcing the 15% limitation in section 12-803, but those cases are factually distinguishable because they involved wages that the employer had not paid to the employee. Here, by contrast, the wages at issue were already paid by Jameson.

¶ 53 Finally, Hudson claims that, in "Pub. L. No. 104-0120" (presumably, Public Act 104-120 (eff. Jan. 1, 2026)), the legislature "amended" section 12-704 of the Wage Deduction Statute to now provide that "wages that are held in a deposit account are immune from enforcement for a period of 30 days." Hudson's claim is faulty. Public Act 104-120 does not concern any extended exemption period for wages in a deposit account; instead, it provides for, among other things, an automatic $1,000 exemption with respect to a "consumer debt judgment." See Pub. Act 104-120 (eff. Jan. 1, 2026) (amending 735 ILCS 5/2-1402).

¶ 54 Additionally, we note that the provision Hudson points to is merely a *proposed* amendment contained in Senate Bill No. 1501 (104th Ill. Gen. Assem., Senate Bill 1501, 2025 Sess.). This bill has not been enacted. Hudson does not cite, and we have not found, any transcript of any legislative debate concerning this bill. The most recent status of this bill is that it has been referred to the senate "Assignments" committee. See generally, ILGA.gov, https://www.ilga.gov /Legislation/BillStatus?DocNum=1501&GAID=18&DocTypeID=SB&LegId=160122&SessionID=114 (last visited Sept. 8, 2025) [https://perma. cc/L3GR-F3ZK]. Since the provision Hudson points to has not been subject to any meaningful legislative debate or action, it cannot reasonably be characterized as a definitive statement of legislative intent. Hudson's argument on this point is thus without merit. The trial court therefore did not err in granting SMS's motion for summary judgment.

¶ 55                                         CONCLUSION

¶ 56     We dismiss citation respondent-appellant's appeal from the trial court's denial of its motion for summary judgment for want of jurisdiction. The court did not err in granting plaintiff's motion for summary judgment because wages deposited in a debtor's account are not statutorily exempt. Accordingly, we dismiss this appeal in part and affirm in part the judgment of the circuit court of Cook County.

¶ 57     Affirmed in part and dismissed in part.

*SMS Financial CH, LLC v. Feurer*, 2025 IL App (1st) 250033

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2010-L-50115; the Hon. James E. Hanlon Jr., Judge, presiding. |
| **Attorneys for Appellant:** | Paul M. Bauch and Rezarta Melo, of Bauch & Michaels, LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Marshall J. Burt, of The Burt Law Group, Ltd., of Chicago, for appellee. |