2026 IL App (1st) 241712-U

SECOND DIVISION
March 3, 2026

No. 1-24-1712

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| ANTHONY POLINSKI, | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 2019 L 009721 |
| | ) | |
| MICHAEL OLSZEWSKI and PROPERTY | ) | |
| HOLDINGS, LLC; | ) | |
| | ) | Honorable James E. Hanlon, Jr., |
| Defendants-Appellants. | ) | Judge, presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Van Tine and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The trial court erred in granting an order for turnover of defendant's interest in a land trust without a sale or assessment of a credit against the defendant's judgment. The court did not err in (1) granting plaintiff's motion for turnover of monies from defendant's joint bank accounts and (2) denying defendant's motion for wrongful garnishment.  Affirmed in part, reversed in part, and remanded for further proceedings.

¶ 2    Plaintiff Anthony Polinski filed a complaint against defendants Michael Olszewski and Property Holdings, LLC (Holdings), alleging breach of contract, common law fraud, and unjust enrichment, in connection with a $70,000 unpaid promissory note.  The trial court found in favor of plaintiff and awarded him $1,748,250 in damages.  Plaintiff subsequently served citations to

discover assets on defendants' bank and the trustee of Olszewski's land trust. On appeal, defendants contend that the trial court erred in (1) granting an order for turnover of defendant Olszewski's interest in a land trust, (2) granting an order for turnover of monies from defendants' various bank accounts, and (3) denying defendants' motion for wrongful garnishment. We affirm in part, reverse in part, and remand for further proceedings.

¶ 3                                              BACKGROUND

¶ 4                                    Prior Proceedings – Trial

¶ 5       The facts of this case are thoroughly discussed in a prior appeal. See *Polinski v. Olszewski*, 2025 IL App (1st) 230936-U. Accordingly, we will limit our facts to those pertinent to the issues raised in this appeal. As noted above, plaintiff's complaint against defendants[1] made the following allegations: Defendant Olszewski, the managing member of Holdings, requested a short-term $70,000 loan from plaintiff in April 2019. Defendant verbally agreed to the terms of the $70,000 loan, which included interest at a rate of $7,000 per week, a $250 per day late payment fee, and a repayment due date of April 11, 2019. Defendant required the funds to be sent no later than 3 p.m. on April 4. Plaintiff's attorney e-mailed a note reflecting these terms to defendant. Defendant said that he had signed the note and would provide the executed copy to plaintiff's attorney on April 5, 2019. Plaintiff then wire transferred $70,000 to the account of Holdings on April 4.

¶ 6       After plaintiff's attorney received and reviewed the signed note, however, the attorney noticed various alterations. The signed note differed from the agreed-upon note as follows: (1) Only Holdings (and not defendant and Holdings) promised to repay the note; (2) the section providing for weekly accrued interest of $7,000 was removed; (3) the section indicating that the borrower was responsible to pay all costs and expenses, including attorney's fees, for the

---

[1] Olszewski is the sole and managing member of Holdings. Accordingly, for the sake of clarity, we refer to Olszewski throughout as "defendant." Holdings and Olszewski collectively are referred to as "defendants."

preparation, recording, and enforcement of the note was removed; (4) the section providing for a $250 daily late charge was removed, and (5) the signature line only indicated defendant was signing the note as the managing member of Holdings (and not individually, as well).

¶ 7 At the conclusion of a lengthy bench trial, the trial court found in favor of plaintiff and awarded him $1,748,250 in damages. On May 23, 2023, defendants filed a motion seeking an appeal bond and to stay enforcement of judgment. Defendants' motion stated that Olszewski had a net worth exceeding $12 million and was awaiting confirmation of a surety bond in excess of $2.5 million from ProSure, a licensed Illinois Surety Bond Firm. On May 26, 2023, the court granted defendants' motion, setting the amount of the appeal bond at 1.5 times the judgment amount (*i.e.*, $2,617,500) to be posted no later than 10 days from the date of the order.[2] We subsequently affirmed the judgment of the trial court. See *Polinski*, 2025 IL App (1st) 230936-U, ¶¶ 154-55, *pet. for leave to appeal pending*, No. 132490 (filed Nov. 18, 2025).

¶ 8 Supplementary Proceedings – Citations and Turnover

¶ 9 On December 27, 2022, plaintiff caused citations to discover assets to be issued to BMO Financial Corporation (BMO) and Chicago Title Land Trust Company (Chicago Title). The citation to BMO sought information as to Olszewski's "accounts or safety deposit boxes" that he either owned or appeared as a signatory. The citation to Chicago Title sought the trust agreement known as "Trust Number 17656" (hereinafter the Trust) as well as any records concerning Olszewski's property, income, or indebtedness owed to him. On September 6, 2023, defendants filed a motion to dismiss these citations, arguing in part that the citations were initiated prematurely

---

[2] The trial court's docket does not indicate that an appeal bond has ever been filed. This court may take judicial notice of the public documents that are included in the records of other courts. See *SMS Financial CH, LLC v. Feurer*, 2025 IL App (1st) 250033, ¶ 12 n.5 (citing *In re Linda B.*, 2017 IL 119392, ¶ 31 n.7; *Empire Indemnity Insurance Co. v. Chicago Province of the Society of Jesus*, 2013 IL App (1st) 112346, ¶ 20 n.4); Ill. Rs. Evid. 201 (eff. Jan. 1, 2011), 803(8) (eff. Jan. 25, 2023).

because they referenced a judgment order dated December 7, 2022 (in favor of plaintiff and against defendants for $1,748,250), which was not a final and enforceable order because it neither resolved plaintiff's claim for attorney fees nor included a finding pursuant to Illinois Supreme Court Rule 304(a) that it was final and enforceable. Defendants concluded that the premature citations were void *ab initio*, precluding the trial court from granting any relief to plaintiff.

¶ 10 On September 20, 2023, prior to the trial court's ruling on defendants' motion to dismiss the initial set of citations, plaintiff caused a second set of citations to discover assets to be issued to BMO as to Olszewski's accounts. A set of citations to BMO with respect to the accounts associated with Holdings was issued the next day.

¶ 11 On October 23, 2023, the trial court granted defendants' motion to dismiss plaintiff's initial citations (issued in December 2022), agreeing that they were void *ab initio*. The court's order further stated that the citations were dismissed "for the reasons stated on the record."[3]

¶ 12 On October 24, 2023, BMO filed amended answers to the second set of citations, indicating that it had frozen $58,450.59 in an account associated with Holdings. BMO's amended answer further stated that it had frozen an additional $33,722.34 in two checking accounts associated with Olszewski. Regarding these two checking accounts, BMO further listed Tamara Olszewski and Nancy Olszewski as "joint account holders or anyone who has a claim on the property." According to BMO, none of the accounts received electronic monthly deposits.

¶ 13 On November 9, 2023, plaintiff filed two motions for turnover of the funds in the BMO accounts associated with Holdings (totaling $58,450.59) and Olszewski (totaling $33,722.34). On November 13, 2023, the circuit clerk issued a second citation to discover assets to Chicago Title. This second citation to Chicago Title, however, indicated that it had been served on "11/9/23."

---

[3] There is no transcript (or acceptable substitute) of this hearing in the record on appeal.

¶ 14    On November 30, 2023, defendants moved to dismiss the second citations issued to BMO and Chicago Title "pursuant to Illinois Supreme Court Rule 277(a) [*sic*]."  Defendants argued that the citations to both BMO and Chicago Title were issued without leave of court pursuant to Rule 277(a) and that the citation to Chicago Title was apparently served *prior to* its issuance.

¶ 15    On December 7, 2023, the trial court issued a series of written orders providing, *inter alia*, that BMO was to immediately release any exempt funds held as a result of any citation in this matter, "including but not limited to social security and readily identifiable retirement and other exempt funds."  The orders further granted plaintiff leave to provide notice to adverse claimants that BMO had identified in its response to the citation proceedings.

¶ 16    On February 5, 2024, the trial court held a hearing on defendants' motion to dismiss the second citations.  The court quashed the second citation issued to Chicago Title because the face of the citation indicated that it had been served prior to the issuance date from the circuit clerk. The court explained that "in order to establish a citation that I can enforce, it needs to be one issued by the clerk before the lien attaches."  Plaintiff then orally requested leave to request issuance of a third citation to Chicago Title, which the court allowed, although the court added, "Leave is granted because my view is in some respects that makes this citation, like the first citation, sort of ineffective, and therefore I don't know that you need leave, but I will give it."  The court then granted defendants' motion to dismiss the citations to Chicago Title and denied the motion to dismiss the citations directed to BMO.

¶ 17    On this same day, plaintiff caused a third set of citations to be issued to Chicago Title. Chicago Title's answer indicated that the sole asset of the Trust was a single family residence on Revere Drive in South Barrington, Illinois, and that Olszewski was the 100% beneficiary of the Trust, and upon his death, his wife would succeed him as beneficiary.

¶ 18    On March 5, 2024, defendants filed a motion seeking a finding of wrongful garnishment and for attorney fees pursuant to section 2-1402(g) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1402(g) (West 2022)).  Defendants argued, in essence, that plaintiff's "wrongful procedure" to seize defendants' property, which included exempt property held by Olszewski's mother, warranted their damages claim from the wrongful garnishment.

¶ 19    On April 5, 2024, plaintiff filed a motion for turnover directed at Chicago Title.  Plaintiff's motion stated that he had been awarded a final judgment of $1,797,403.26 (including attorney fees of $49,153.26) and that Chicago Title's response to his citation to discover assets indicated that Olszewski held a "100% beneficial interest and the power of direction" in the Trust.  Plaintiff asked the court to direct Chicago Title to turnover 100% of Olszewski's beneficial interest in the Trust to plaintiff, or alternatively, for a "lien against the beneficial interest."

¶ 20    On June 4, 2024, Olszewski filed a response in opposition on two grounds.  First, defendants argued that turnover is improper because the third-party mortgage holder on the residence had not been notified.  Olszewski stated that, at Olszewski's citation examination on April 19, 2024, plaintiff had elicited from Olszewski that the corpus of the Trust (*i.e.*, Olszewski's residence) was "subject to an open mortgage held by a third party."  Olszewski attached a printout purportedly from the Cook County Clerk's office indicating a mortgage.  Olszewski's second argument in response to plaintiff's motion for turnover urged the court to instead impose a judicial lien on his beneficial interest.  Olszewski argued that that remedy would be more appropriate because "there is a viable chance of the judgment being disturbed upon appellate review."

¶ 21    On July 23, 2024, the trial court held a hearing on defendants' wrongful garnishment motion and plaintiff's citations to BMO and Chicago Title.  Defendants argued that they were entitled to a finding of wrongful garnishment because the "first round" of citations were quashed as there had been no final judgment at the time of issuance.  Defendants further pointed out that

the "next round" was quashed because it was "not properly issued." Defendants stated that there has been a pattern of citations being improperly issued either because there was no final judgment or because "they weren't issued properly pursuant to the [C]ode." Defendants added that their accounts at BMO have been frozen for "over a year and a half" but conceded that the funds "are now properly frozen." In response, plaintiff argued that defendants had not been harmed because they "owe the money." The court asked plaintiff's counsel whether BMO had been informed when the court quashed the first set of citations. Plaintiff's counsel responded that he did not recall whether he sent the order but added, "I would assume [defense counsel] would have done that. Defendants would have wanted that, ***."

¶ 22    With respect to plaintiff's citations to BMO and Chicago Title, plaintiff argued that the mortgage on the underlying property (Olszewski's personal residence) had not been disclosed and that, when directly asked during his citation deposition whether the property had a mortgage, Olszewski stated that he did not know and could not remember. In response to the trial court's question, plaintiff further confirmed that the mortgage did not include any assignment or lien on the Trust's beneficial interest and that the mortgage was "simply on the real property as it's held in the name of the [Trust]." At the conclusion of the hearing the court stated, *inter alia*, that it would "hold off" on entering a turnover order with respect to the BMO account jointly titled with Olszewski's mother because the court wanted a "good answer" from BMO explaining how it arrived at the amount it had frozen. The court further noted that an appellate bond would "preclude enforcement of the judgment," but no such bond had been posted.

¶ 23    On July 25, 2024, the trial court entered a written order denying defendants' motion seeking a finding of wrongful garnishment. On that same day, the court entered an "order of turnover" directing Chicago Title to turn over 100% of the beneficial interest in the Trust to plaintiff. The order stated that, following full briefing and argument, it found that Chicago Title's

7

answer indicated that Olszewski held the sole beneficial interest, there were no collateral assignees, and the trust assets consisted of the South Barrington residence. The order further stated, "From the date of this order, [plaintiff] is the sole beneficiary and power of direction holder" of the Trust. Both orders also included a finding under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason to delay enforcement or appeal of the order. Defendants did not file a motion to reconsider this order.

¶ 24 On July 29, 2024, the trial court entered a written order regarding plaintiff's motion for turnover order directed at BMO. The court found that BMO's amended answer indicated that it was holding $58,450.59 in an account titled in the name of Holdings and that BMO's second amended answer indicated that (1) it was holding $22,233.49 in one account ("Account No. XX2875") that was "jointly titled and belonging to" Olszewski and (2) another account ("Account No. XX3729") had a balance of $16,143.86, from which BMO was holding $11,488.85 in nonexempt funds. The court then directed BMO to immediately transfer the entirety of the funds in the Holdings account and the account denoted as "Account No. XX2875" to plaintiff. The court then directed BMO to maintain a freeze on "Account No. XX3729" and to provide an amended answer with a "complete and detailed accounting" that would "specifically address the discrepancy" between the reported account balance ($16,143.86) and the amount withheld ($11,488.85) before August 16, 2024. Finally, the court continued the matter to September 5, 2024, and made a Rule 304(a) finding of no reason to delay enforcement or appeal of this order.

¶ 25 On August 15, 2024, BMO filed its "third amended" answer to the citation. BMO indicated that it had withheld $11,488.85 in addition to a $100 "legal processing fee" with respect to the account denoted as "XX3729." BMO also included a letter explaining that "account *3729" had a balance of $16,143.85, which included exempt social security benefits of $4,555.00. BMO

8

further stated that it assessed a $100 "garnishment fee," resulting in a net amount of $11,488.85 (*i.e.*, $16,143.85, less $4,555.00, less an additional $100) that it placed on hold.

¶ 26    On September 5, 2024, the trial court issued a written order concerning plaintiff's motions for turnover directed to BMO.  The court noted that notice had been given to all parties— "including adverse claimants," the motion was fully briefed, and the court had heard arguments. The court's order directed BMO to transfer $7,488.85 from "Acct. No. XX3729" to plaintiff, which the court noted comprised the amount held of $11,488.85 less "Olszewski's claimed $4,000.00 personal exemption (wild card)."  The court again made a Rule 304(a) finding.

¶ 27    This appeal follows.

¶ 28                                    ANALYSIS

¶ 29    On appeal, defendants contend that the trial court erred in:  (1) granting plaintiff's motion for a turnover order of defendant's beneficial interest in a land trust directly to plaintiff without ordering a sale, notifying the mortgagee of record, and applying any credit against the judgment; (2) denying their motion to dismiss the second BMO citations on the basis that plaintiff was not required to obtain leave of court pursuant to Rule 277(a) before issuing the citations; (3) ordering a turnover from BMO without a full hearing; and (4) denying their wrongful garnishment motion.

¶ 30                          The Chicago Title Citation

¶ 31  Defendants first contend that the trial court erred in granting plaintiff's motion for a turnover of 100% of Olszewski's beneficial interest in a land trust directly to plaintiff without ordering a sale, notifying the mortgagee of record, or applying any credit against the judgment. Defendants make two arguments in support of their claim of error.  First, they argue that there is "no statutory authority" allowing a direct transfer of Olszewski's interest in the land trust directly to plaintiff without a sale pursuant to section 2-1402(e) of the Code.  Second, they argue that the court improperly found that no notice was required to the mortgagee of the property pursuant to

9

section 2-1402(g) of the Code because there had been no assignment to the mortgagee of the beneficial interest in the land trust (only an interest in legal title to the property itself had been assigned). Defendants ask that we reverse the turnover of Olszewski's interest in the land trust, hold that the transfer was void, and remand the matter with instructions to the court to put the interest in the trust to sale with postjudgment interest added as of the date of the transfer order.

¶ 32     As a preliminary matter, we note that defendants never claimed before the trial court that section 2-1402(e) precludes a direct transfer of a judgment debtor's property (here, Olszewski's beneficial interest in the Trust) to the judgment creditor (*i.e.*, plaintiff). We reject defendants' argument that the court "directly" addressed this matter during the hearing on plaintiff's motion for turnover. To the contrary, the court and *plaintiff's* counsel discussed a "practical" issue for plaintiff regarding plaintiff's "taking a beneficial interest in property that's subject to a mortgage and then [Olszewski] decides why bother paying the mortgage anymore," with plaintiff then at risk for losing the transferred beneficial interest following a foreclosure action. Defendants' counsel at the time largely stood mute during this discussion, merely confirming the approximate amount of the judgment. That discussion cannot reasonably be construed as a clear argument concerning the issue defendants now raise before this court. Since this argument was never presented to the trial court, it is forfeited. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 63 (citing *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996) ("It is well settled that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal.")). For this reason alone, we may reject defendants' argument.

¶ 33     Nonetheless, we recognize that forfeiture is a limitation on the parties, not the court, and we may choose to address an otherwise forfeited matter to achieve a just result and maintain a uniform body of precedent. *In re Jamari R.*, 2017 IL App (1st) 160850, ¶ 52. This is especially

true where, as here, "important issues that are indispensable to a just resolution of the appeal before the court are involved." *Id.* Therefore, we will relax the forfeiture rule and resolve this issue.

¶ 34    In Illinois, civil judgments may be enforced through supplementary proceedings pursuant to section 2-1402 of the Code (735 ILCS 5/2-1402 (West 2022)). Under section 2-1402(a), a judgment creditor may commence proceedings against the judgment debtor or a third party to discover the judgment debtor's assets and apply those assets to the debt owed to the judgment creditor. *Id.* § 2-1402(a). The purpose of supplemental proceedings is to discover "assets or income of the debtor not exempt from the enforcement of the judgment." *Id.* Section 2-1402(c)(3) further permits the court to order a third party to deliver up assets. *Id.* § (c)(3).

¶ 35    Sections 2-1402(e) and (g) of the Code provide in pertinent part as follows:

> "(e)  All property ordered to be delivered up shall, except as otherwise provided in this Section, be delivered to the sheriff to be collected by the sheriff or sold at public sale and the proceeds thereof applied towards the payment of costs and the satisfaction of the judgment. If the judgment debtor's property is of such a nature that it is not readily delivered up to the sheriff for public sale or if another method of sale is more appropriate to liquidate the property or enhance its value at sale, the court may order the sale of such property by the debtor, third party respondent, or by a selling agent other than the sheriff upon such terms as are just and equitable. The proceeds of sale, after deducting reasonable and necessary expenses, are to be turned over to the creditor and applied to the balance due on the judgment.

* * *

> (g)  If it appears that any property, \*\*\* or any interest therein, is claimed by any person, the court shall, as in garnishment proceedings, permit or require the claimant to appear and maintain his or her right."  735 ILCS 5/2-1402 (West 2022).

Section 2-1402(g) further states that the rights of the person cited and any adverse claimant "shall be asserted and determined pursuant to the law relating to garnishment proceedings."  *Id.* § (g).

¶ 36    As to the standard of review, we note that, although the trial court's order granting plaintiff's motions for turnover included various "findings," those findings were in fact based upon the parties arguments at the hearing and the documents submitted to the court.  Accordingly, our review is *de novo*.  See *Dowling v. Chicago Options Associates, Inc.*, 226 Ill. 2d 277, 285 (2007) (applying *de novo* standard where the trial court "apparently relied on the parties' oral argument and the record") (citing *Northwest Diversified, Inc. v. Mauer*, 341 Ill. App. 3d 27, 33 (2003)).

¶ 37    Here, the trial court ordered Chicago Title to turn over Olszewski's beneficial interest in the Trust directly to plaintiff.  The court's order, however, erred in doing so because section 2-1402(e) requires that a judgment debtor's nonexempt personal property be turned over to either the sheriff or some other "selling agent" for public sale.  See 735 ILCS 5/2-1402(e) (West 2022); see also *Dowling*, 365 Ill. App. 3d at 355; *Wells Fargo Bank Minnesota, NA v. Envirobusiness, Inc.*, 2014 IL App (1st) 133575, ¶ 38.

¶ 38    Although defendants state that plaintiff has begun proceedings to evict "Olszewski and his family from their family home," we note that this course of action could have been avoided had defendants merely posted either an appellate bond or acceptable substitute pursuant to Illinois Supreme Court Rule 305(a) (eff. July 1, 2017).  In any event, it is unclear from the record whether plaintiff has sold Olszewski's interest in the property.  If the property (*i.e.*, the beneficial interest in the Trust containing Olszewski's residence) has been sold, there should be a credit for the fair

market value of the property against the underlying judgment. If, however, the property has not been sold, then the trial court should enter a revised order directing that the property be tendered to the sheriff or another "selling agent" as determined by the court, who will conduct a sale of the property, as prescribed in section 2-1402(e) of the Code. See *Dowling*, 365 Ill. App. 3d at 355. We must therefore remand this cause to the trial court for further proceedings.

¶ 39    With respect to the lack of notice to the mortgagee, although defendants point out that the mortgage on Olszewski's residence included a purported security interest in favor of the mortgagee (thus mandating notice pursuant to section 2-1402(g)), we note that defendants did not provide this specific information to the trial court, nor did it ask the court to take judicial notice of a recorded "Land Trust Rider" to the mortgage. It is a deeply rooted rule that a trial court must be apprised of facts subject to judicial notice. See *Kyles v. Maryville Academy*, 359 Ill. App. 3d 423, 438 (2005) ("it would be impractical to require a circuit court in reviewing a summary judgment motion to be omnisciently aware of a municipal ordinance without the assistance of its proponent"); *People ex rel. McCallister v. Keokuk & Hamilton Bridge Co.*, 287 Ill. 246, 250-51 (1919) ("judicial notice is a branch of the law of evidence, and authorizes the court, whenever a fact is material, to take judicial notice of the fact, but it must be presented to the court in some way"). This includes even those matters much closer to a trial court. See *In re T.W.*, 2023 IL App (3d) 220066-U, ¶ 62 ("While it is not clear from the record when or if the trial court took judicial notice of the prior proceedings, at the very least, respondent could have objected when the trial court made its findings known in the written dispositional order if respondent believed that those findings were the result of the trial court improperly taking judicial notice of the prior proceedings.").[4]  Here, defense counsel did nothing when the court indicated that there was no interest in the Trust's

---

[4]  This case is cited merely as persuasive authority. See Ill. S. Ct. R. 23(e) (eff. June 3, 2025).

beneficial interest other than Olszewski. As in *T.W.*, defense counsel could have at the very least objected when the court made that statement and asked the court to take judicial notice of the amended and recorded mortgage on the property. We are in the dark as to why defense counsel remained mute in the face of the court's alleged error. Nonetheless, since we are remanding this cause for further proceedings as to the sale of the beneficial interest, we direct the court to ensure notice is provided pursuant to section 2-1402(g) of the Code.

¶ 40                                    The BMO Citations

¶ 41    Defendants next make two contentions of error with respect to the BMO citations. First, they contend that the trial court erroneously denied their motion to dismiss plaintiff's second set of citations to discover assets to BMO. Specifically, defendants argue that, although the court found the first set of citations void *ab initio* because they were issued prior to the entry of a final, enforceable judgment, the court erroneously allowed plaintiff to cause a second set of citations to be issued without first obtaining leave of court, which defendants argue is required pursuant to Rule 277(a). Their second contention is that the court further erred in granting plaintiff's motion for a turnover of monies held by BMO in violation of section 2-1402(g) of the Code (735 ILCS 5/2-1402(g) (West 2020)), which they claim requires a full hearing prior to granting the turnover.

¶ 42    Defendants' first argument turns upon the construction of Rule 277(a). We construe supreme court rules in the same manner as statutes. *Wells Fargo Bank, N.A. v. Simpson*, 2015 IL App (1st) 142925, ¶ 35 (citing *Robidoux v. Oliphant*, 201 Ill. 2d 324, 332 (2002)); see also Ill. S. Ct. R. 2, committee comments (rev. July 1, 1971) ("Paragraph (a) makes it clear that the same principles that govern the construction of statutes are applicable to the rules."). Accordingly, when interpreting a supreme court rule, we must ascertain and give effect to the intent of the drafters (*i.e.*, our supreme court). *Robidoux*, 201 Ill. 2d at 332. The most reliable indicator of the court's intent is the rule's actual language, which should be given its plain and ordinary meaning. *Id.* The

construction of a court rule is a question of law; accordingly, our standard of review is *de novo*. *In re Estate of Rennick*, 181 Ill. 2d 395, 401 (1998).

¶ 43    Rule 277(a) states in relevant part as follows:

> "A supplementary proceeding authorized by section 2-1402 of the Code *** may be commenced at any time with respect to a judgment which is subject to enforcement. ***. If there has been a prior supplementary proceeding with respect to the same judgment against the party, whether he is the judgment debtor or a third party, no further proceeding shall be commenced against him except by leave of court." Ill. S. Ct. R. 277(a) (eff. Oct. 1, 2021)).

Rule 277(b) further states that the supplementary proceeding shall be commenced by serving a citation on the party against whom it is brought and that the circuit clerk shall issue a citation upon oral request. Ill. S. Ct. R. 277(b) (eff. Oct. 1, 2021)).

¶ 44    In this case, the trial court did not err in refusing to dismiss the second set of citations directed at BMO. Rule 277(a) states that supplementary proceedings pursuant to section 2-1402 of the Code may be commenced at any time regarding judgments that are "subject to enforcement." Ill. S. Ct. R. 277(a) (eff. Oct. 1, 2021)). As noted above, section 2-1402(a) also requires there to be an enforceable judgment before supplementary proceedings may be commenced. 735 ICLS 5/2-1402(a) (West 2022). There is no dispute that, when plaintiff caused the first set of citations to be issued to BMO, there was no final (and thus enforceable) order. Therefore, under the plain language of both Rule 277 and section 2-1402(a), no supplementary proceedings could properly be held. As such, although plaintiff caused the issuance of the initial set of citations to BMO, there was no "authorized" proceeding and any attempt to initiate or conduct these premature supplementary proceedings was a nullity. Accordingly, plaintiff did not need to seek leave of court

prior to causing the issuance of the second set of citations to BMO.  Therefore, the court properly denied defendants' motion to dismiss on this basis.

¶ 45    Moreover, defendants' reliance on *Marble Emporium, Inc. v. Vuksanovic*, 339 Ill. App. 3d 84 (2003), is misplaced.  There, the plaintiff (a masonry supplier and installer) supplied materials and services for a project owned by Richard Swin.  *Id.* at 86.  Swin authorized a general contractor (K & B) to contract with others for construction services for the project.  *Id.*  When the work was completed, the plaintiff was owed $18,635 plus interest.  The defendant (Vuksanovic) was the president of K & B and personally guaranteed collection of the $18,635.  *Id.*  Claiming that the debt was never paid, the plaintiff filed a complaint to foreclose a mechanic's lien against the defendant and various other parties, including Swin and K & B.  *Id.*  The trial court entered a default judgment against the defendant, and the plaintiff began supplementary proceedings while the cause of action remained pending against other defendants.  *Id.* at 86-87.  The court subsequently approved a settlement between the plaintiff and Swin but did not include a Rule 304(a) finding.  *Id.* at 87.  The court later granted the plaintiff's motion for the turnover of the defendant's painting collection.  *Id.* at 87-88.

¶ 46    On appeal, this court agreed with the defendant's argument that, in the absence of Rule 304(a) language, there was no final judgment to "serve as a predicate" to supplementary proceedings.  *Id.* at 91.  The court held that the default judgment order "did not confer the requisite enforceability or appealability necessary to legitimize the supplementary proceedings that were mistakenly allowed to take place."  *Id.*  The court further stated that the trial court exceeded its statutory authority and "lacked authority to conduct the supplementary proceedings *in toto*."  *Id.* This court equated "an enforceable and appealable judgment" with "the jurisdictional prerequisite" of supplementary proceedings.  *Id.*

¶ 47    Here, plaintiff was similarly lacking an enforceable and appealable judgment, and thus also lacked the jurisdictional prerequisite to commence supplementary proceedings.   Although the circuit clerk erroneously issued the initial citations to BMO, that error does not overrule the requirements of Rule 277 or section 2-1402.   As such, there were no "prior supplementary proceedings" that would have required plaintiff to seek leave to have the second set of citations issued to BMO.  Defendants' reliance upon *Marble Emporium* is therefore misplaced.

¶ 48    Defendants next argue that the trial court erred in "enforcing" the turnover orders regarding the accounts held in BMO because, although section 2-1402(*l*) of the Code allows for a hearing at which a judgment debtor can seek a declaration that certain property is exempt, the court improperly "curtailed inquiry" into whether BMO exempted the correct amount of money from the accounts it had already "frozen."  Defendants' argument is without merit.

¶ 49    As noted above, section 2-1402(g) provides in pertinent part that, "[i]f it appears that any property, *** is claimed by any person, the court shall, *as in garnishment proceedings, permit or require* the claimant to appear and maintain his or her right."  (Emphasis added.)  735 ILCS 5/2-1402(g) (West 2022).  Section 2-1402(*l*) states as follows:

> "At any citation hearing at which the judgment debtor appears and seeks a declaration that certain of his *** income or assets are exempt, the court shall proceed to determine whether the property which the judgment debtor declares to be exempt is exempt from judgment.  At any time before the return date specified on the citation, the judgment debtor may request, in writing, a hearing to declare exempt certain income and assets by notifying the clerk of the court before that time, using forms as may be provided by the clerk of the court."  735 ILCS 5/2-1402(*l*) (West 2022).

Section 2-1402(*l*) further provides that, absent good cause for a continuance, the court shall "immediately *** proceed to determine whether the property which the judgment debtor declares to be exempt is exempt from judgment." *Id.*

¶ 50   In this case, the trial court committed no error. Pursuant to section 2-1402(*l*), the judgment debtor (*i.e.*, Olszewski) could submit a written request for a hearing to declare certain assets exempt. See *id.* Defendants do not cite to anything in the record (nor do we find anything) to indicate that he did so. Accordingly, it is forfeited on appeal. See *Coghlan*, 2013 IL App (1st) 120891, ¶ 63 (citing *Haudrich*, 169 Ill. 2d at 536).

¶ 51   Forfeiture aside, defendants' claim is unavailing. Section 2-1402(g) merely provides that the court shall permit or require a claimant to appear; there is no obligation for it to do so *sua sponte*. The court cannot permit a claimant to appear unless that claimant makes a request. The purported claimant here, Olszewski's mother (Nancy), made no such request despite the fact that notice had been provided.

¶ 52   Furthermore, section 2-1402(g) cannot reasonably be interpreted that the term "shall" also applies to the term "require" with respect to an apparent claimant's appearance at the citation hearing. At the outset, we must not read a statute so as to render any part superfluous or meaningless. *People ex rel. Illinois Department of Corrections v. Hawkins*, 2011 IL 110792, ¶ 23 (citing *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990)). Were we to hold that, pursuant to section 2-4102(g), a trial court must require *all* apparent claimants to appear at a hearing, then the prior phrase "shall permit" would be rendered superfluous, which is improper. See *id.*

¶ 53   In addition, " 'we are not bound by the literal language of a statute if that language produces absurd or unjust results not contemplated by the legislature.' " *Id.* (citing *In re Donald A.G.*, 221 Ill. 2d 234, 246 (2006). Requiring a trial court to order the appearance of *all* potential claimants to a citation hearing (perhaps even nonparties and those who have waived any right to the property)

18

would result in both inconvenience and an absurd result. Defendants have provided no indication that the legislature would have intended such an absurd or inconvenient result, and we have none.

¶ 54    Moreover, it is well established that, although the term "shall" generally is regarded as mandatory (e.g., as "must"), it may nonetheless be construed as "may," depending on the legislative intent. *Andrews v. Foxworthy*, 71 Ill. 2d 13, 21 (1978). As the *Andrews* court explained, when a statute prescribes the performance of an act by a public official or a public body, the question of whether it is mandatory or directory depends on its purpose:  if the provision "merely directs a manner of conduct for the guidance of the officials ***, it is directory, ***"; if the provision prescribes conduct "in order to safeguard someone's rights, which may be injuriously affected by failure to act within the specified time, the statute is mandatory." *Id.*  Here, the provision in question merely directs the manner of conduct with respect to the appearance of a potential claimant at a citation hearing; it does not jeopardize that potential claimant's rights under the statute.  Accordingly, employing a "practical and common-sense construction," as we must, (see *Trapp v. City of Burbank Firefighters' Pension Fund*, 2024 IL App (1st) 231311, ¶ 16 (quoting *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25)), the term "shall *** require" is merely directory and not mandatory.  Therefore, section 2-1402(g), properly interpreted, provides that the trial court *must permit* an apparent claimant to appear at a citation hearing, and it *may* furthermore *require* a potential claimant to appear.

¶ 55    We further note that section 2-1402(g) states that, "[i]f it appears that any property, *** is claimed by any person, the court shall, *as in garnishment proceedings, permit or require* the claimant to appear and maintain his or her right."  We must interpret section 2-1402(g) in light of other relevant portions of the statute and not construe its words and phrases in isolation. *Trapp*, 2024 IL App (1st) 231311, ¶ 16 (citing *Carver v. Sheriff of La Salle County*, 203 Ill. 2d 497, 507-08 (2003).  Section 12-710(a) of the Code merely provides that, in a garnishment proceeding, "[i]n

the event any indebtedness or other property due from or in the possession of a garnishee is claimed by any other person, *the court shall permit the claimant to appear* and maintain his or her claim." 735 ILCS 5/12-710(a) (West 2024)  The section further states that, if a claimant "fails to appear after being served with notice in the manner directed, *** she shall be concluded by the judgment entered in the garnishment proceeding." *Id.*  Since the conduct of the court with respect to potential claimants pursuant to section 2-1402(g) should be similar to those in garnishment proceedings, the court would not be required to force the appearance of all potential claimants.

¶ 56    Finally, the court's turnover order was based upon the specific response from BMO precisely explaining the amounts it had exempted from the accounts and the additional $100 fee it had imposed.  On these facts, no error occurred.

¶ 57    Nonetheless, defendants insist that the conduct of the hearing violated section 2-1402(g) and rely upon *Highsmith v. Department of Public Aid*, 345 Ill. App. 3d 774 (2004), in support of their assertion.  *Highsmith*, however, is distinguishable.  At the outset, it involved a proceeding under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2000)).  *Highsmith*, 345 Ill. App. 3d at 776.  In addition, the plaintiff there requested a hearing and the dispute concerned whether the plaintiff had sole ownership of an account that was jointly titled with his son (who owed past-due child support).  *Id.*  Here, the proceedings are not subject to administrative review, neither Olszewski nor his counsel requested a hearing, and there is no dispute here that the account is a joint account.  Therefore, *Highsmith* is both factually and legally distinguishable, and defendants' claim that "restricting proof to documentary evidence and not permitting testimonial evidence violates due process" is too broad of a reading of that case.

¶ 58                    Defendants' Wrongful Garnishment Motion

¶ 59    Finally, defendants contend that the trial court improperly dismissed their motion for wrongful garnishment.  Defendants' argument in their opening brief, however, comprises a mere

20

two paragraphs, a bare string cite, and no analysis. Defendants' citation of a lengthy block quote in his reply brief with little relevant discussion is equally insufficient.

¶ 60 Illinois Supreme Court Rule 341 requires that the argument section of an appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Although defendants recite a string cite of cases, there is nothing concerning the appropriate standard of review on this issue nor do they provide an argument discussing the extent to which those cases are distinguishable (if at all). Our supreme court has long criticized this practice: "As we have previously instructed, 'a reviewing court is not simply a depository into which a party may dump the burden of argument and research.' " *Lake County Grading Co., LLC v. Village of Antioch*, 2014 IL 115805, ¶ 36 (quoting *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56). Failure to comply with Supreme Court Rule 341 results in a waiver of those issues. *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009). On this basis alone, we may affirm the decision of the trial court.[5]

¶ 61 Forfeiture aside, defendants' final claim of error is meritless. At the outset, the general rule is that a wrongful garnishment is predicated upon the garnishor having no right to the property garnished. See 38 C.J.S. *Garnishment* § 456 (Dec. 2025 Update) ("A garnishment is wrongful if the garnishor does not own a beneficial interest in the property garnished ***."); see also, *e.g.*, *Schak v. Blom*, 334 Ill. App. 3d 129, 133 (2002) ("If the third party possesses *no* assets of the judgment debtor, then the court has no authority to enter any judgment against the third party in a supplementary proceeding." (Emphasis added.)). Here, plaintiff had at least an arguable (albeit

---

[5] The record in this case also contains no indication that, upon the trial court's granting of defendants' motion to quash the first set of citations (because the judgment was nonfinal at the time of their issuance), defendants notified BMO that the citations had been quashed. Plaintiff, however, does not argue that defendants' argument on appeal is forfeited on this basis.

premature) right to the property because his petition for attorney fees had not been decided. Furthermore, it is clear that Olszewski was at least one of the titled owners of the BMO accounts.

¶ 62    Finally, we reject defendants' sole reliance upon *Neri v. J.I. Case Co.*, 207 Ill. App. 3d 409; *Foley Brokerage Co. v. Feldman Bros. Commission*, 330 Ill. App. 372 (1947); and *Schak*, 334 Ill. App. 3d 129.  In those cases, either the party filing the wrongful garnishment motion was a completely "innocent" party or the judgment underlying the garnishment was void.  See *Neri*, 207 Ill. App. 3d at 411 ("The attorneys assumed that the Michael Neri in the first action was the same as the Michael Neri in the second action and that he had an account at Des Plaines National Bank.  The attorneys then garnished an account belonging to Michael Neri at Des Plaines National Bank.  The account garnished was plaintiff's, and he was not the same Michael Neri who was the party defendant in either of the two cases."); *Schak*, 334 Ill. App. 3d at 131 (noting that the judgment debtor (defendant) had no interest in the property and thus no interest in the proceeds from the subsequent sale of the property); *Foley*, 330 Ill. App. at 372 (noting that "the garnishment proceedings instituted by the defendant corporation against Central Bank and Continental Bank were both predicated on a void judgment, since [the judgment debtor], a [purported] corporation, was nonexistent").  Neither of those facts apply here.  We further note that, in all three cases, the wrongful garnishment motions were brought *after* the turnover order had been entered and the disputed property had been transferred to the judgment creditor.  See *Schak*, 334 Ill. App. 3d at 131-32; *Neri*, 207 Ill. App. 3d at 410-11; *Foley*, 330 Ill. App. at 373-74.  Here, by contrast, defendants' motion was brought *before* any property (namely, the funds in the BMO accounts) had been turned over to plaintiff, although we recognize that BMO had "frozen" the funds. Defendants' final claim of error is thus unavailing.

22

¶ 63                                    III. CONCLUSION

¶ 64     The trial court erred in granting an order for turnover of defendant's interest in a land trust without a sale or assessment of a credit against the outstanding judgment. The court, however, did not err in (1) granting plaintiff's motion for turnover of monies from defendant's joint bank accounts and (2) denying defendant's motion for wrongful garnishment. Accordingly, we affirm in part and reverse in part the judgment of the trial court, and we remand this cause for further proceedings consistent with this order.

¶ 65     Affirmed in part, reversed in part, and remanded for further proceedings.